## Price v. Commonwealth.

Dec. 10, 1943.

C. F. See, Jr. for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the trial of appellant in the Lawrence Circuit Court—under an indictment charging him, Wilson Meade and Oscar Haven Runyon, Jr., of stealing chickens of the value of more than $2 from the owner, Vent Walters—he was convicted and punished by confinement in the penitentiary for one year. His motion for a new trial was overruled and from the judgment pronounced on the verdict he prosecutes this appeal.

His sole ground for reversal, as urged by his counsel in this court, is, that the testimony of his guilt as given by his two co-defendants was not corroborated as is required by section 241 of the Criminal Code of Practice, which prescribes that: "A conviction can not be

had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; * * *." In construing that section it was frequently held in some opinions of this court that the corroboration therein prescribed should of itself—and wholly independent of the testimony of the accomplice—be sufficient to sustain a conviction after eliminating entirely the testimony of the accomplice, but which, as pointed out in the case of Williams v. Com., 257 Ky. 175, 77 S. W. (2d) 609, was in direct conflict with the prevailing rule and also with some prior opinions rendered by this court. We held in that (Williams) opinion that to follow the interpretation requiring the corroborating testimony to be itself sufficient to sustain a conviction was not required by the language of the section of the Criminal Code requiring such corroboration which, as it will be perceived, is, that the corroborating testimony necessary to sustain a conviction should only *tend* "to connect the defendant with the commission of the offense." As defined in the text in 14a C.J. 1428, it is: "Evidence which aliunde tends to prove the prisoner's guilt independent of his declarations; evidence which tends to connect the accused with the particular crime under investigation; evidence which would tend to establish the disputed facts by other circumstonces; additional evidence, of a different character, to the same point, it must have relation to and connection with the crime as to furnish some evidence, direct or circumstantial, of its commission." See also 20 C.J.S., page 238, Corroborate.

Among the various definitions of the word "tend" as given in the text of 62 C.J. 577 are: "to contribute, or conduce in some degree or way * * * ; to have a more or less direct bearing or effect; to have or give leaning to; to influence." The same definition, in substance, is also given by Mr. Webster and other lexicographers. The same authorities point out that it is not synonymous with "burden of proof," or "required sufficiency to sustain a conviction." From the foregoing it may be correctly said that the necessary degree of corroboration is reached if it lies somewhere between facts creating only a bare suspicion, and testimony sufficient to sustain a verdict finding the accused guilty. Therefore if the corroborating testimony is of such a nature and character as to inspire belief in a reasonable and unprejudiced mind that it points toward guilt and links up with the

principal fact under investigation, then the corroboration required by the rule contained in the section of the Criminal Code supra, is fully met. It is usually a question for the jury as to whether the required corroborating evidence has been produced under a proper instruction submitting that issue. But if it is clear that the testimony offered in substantiation of the required corroboration has no foundation, but rests entirely in surmise or speculation, it then becomes the duty of the court to disregard it and to direct an acquittal of the defendant on trial for want of necessary corroboration. The Williams opinion gave a complete history of the origin and purpose of requiring testimony of an accomplice in criminal cases to be corroborated. The whole court considered the case and it was finally concluded that the Code section supra should be interpreted as therein made.

The two accomplices in this case who were jointly indicted with defendant were themselves convicted and they testified at the trial of appellant that he participated in the stealing of the chickens in this case. Their testimony, as well as that of defendant, proved that the three defendants in the indictment resided in the same locality, and at least one of them resided in the same village in which appellant resided. The evidence shows that the larceny of the chickens was committed between ten and eleven o'clock p. m.; that early the following morning Runyon and Meade appeared at the country store operated by John Brown. They brought with them some thirteen or more old hens which they proposed to and did sell to Brown for $13. It was between four and five o'clock a. m. but appellant did not accompany the other two in their visit to Brown's store. In going to it they crossed a small stream flowing by it and recrossed it after receiving the price of the chickens. Brown observed a third man standing on the opposite side of the stream, but it was too dark for him on that February morn to identify that person. However, he saw Meade and Runyon meet with the third individual across the stream and all three of them departed together. A witness, Bennie Cook, testified that he met between the hours supra, all three of the accused in the indictment somewhere on the road ''just below Mr. Walters' house.'' He recognized Price and Meade but said he did not know Runyon at that time. Defendant in giving his testimony admitted that he was with his two

148

co-defendants in the indictment at the time and place stated by Cook, whom he knew.

The testimony of defendant is so vague, evasive and incredible that we have concluded to insert his entire examination in chief. It is:

"Q. Your name is Chester Price? A. Yes, sir.

"Q. Where do you live? A. Richardson.

"Q. Tell the Court whether or not you stole Vent Walters' chickens, or anybody else's? A. No, sir.

"Q. Were you over at John Brown's store, with these boys? A. No, sir."

On cross-examination he testified that he was not in the neighborhood of the Walters' residence on the night the chickens were stolen. Notwithstanding he also testified that he saw the witness, Cook, and that the latter saw him, and he then testified:

"We met him up there in the car.

"Q. You were up in that neighborhood? A. It was up above the house.

"Q. How far? A. About three-quarters of a mile, I guess."

The two accomplices testified that after receiving the money for the chickens from the merchant, Brown, all three of them sometime later boarded a passenger train at a station called Henrietta and went to Louisa. A passenger on that train testified that he saw the three indicted defendants on that train when Meade and Runyon occupied one seat and just across the aisle from them appellant was seated. Going back now to the testimony of appellant, he was asked:

"Q. And the next morning you got on the train up there some place and came to Louisa with them? A. Yes, sir.

"Q. You all came together? A. Yes, sir.

"Q. Where had you all been the night before? A. I don't know where they had been. I went to Chestnut and stayed all night with Jim Dutton and got on the train there.

"Q. What time did you get up to Jim's house? A. About one o'clock I guess."

Further testifying, he said that he was not acquainted with any members of the family of Jim Dutton nor was he related to him and had known him "about a year or two," but had not been an intimate associate with him. He was then asked: "Where did you go with these boys after Cook saw you? A. I went ahead to Chestnut and they stopped up there and went across the hill and I went ahead."

There is more to be gleaned of an incriminating nature from what defendant did not say in his testimony than from that which he did say, and which is gathered by the process usually designated as "reading between the lines." He was out that night on the road leading to, and not far from, the Walters' residence in company with his co-defendants. He failed to state any reason whatever for the trio to be so engaged in wandering about over the country at that hour of the night. He likewise gave no reason for spending the remainder of the night with his casual acquaintance, Dutton, in the circumstances outlined. The coincidental meeting with his co-defendants at the train early the next morning with whom he had been but recently separated in the late hours of the forepart of the preceding night is a circumstance of considerable potency and which quite naturally leads to the conclusion that they were making a visit to Louisa with the proceeds of Walters' chickens.

Neither courts nor juries are required to shut their eyes to such facts and circumstances and which, as we have seen, is one of the means by which it may be determined whether the required corroboration measures up to the degree of connecting "the defendant with the commission of the offense." Our interpretation of the corroborating evidence in the Williams case is no more convincing than that contained in the instant record. It is true that the appellant in that case was shown to have committed other offenses in conjunction with his accomplice, or accomplices and which does not appear in this case. However, the two occasions when appellant was associated with his two accomplices—the one immediately before, or about the time of the stealing of the chickens, and the other one shortly thereafter when all of them boarded the train going to Louisa—are each potent facts tending strongly to show appellant's *connection* with the stealing of the chickens. Their nearness to the commission of the crime both geographically and

150

in point of time, make them more convincing than any testimony against appellant in the Williams case. The unexplained suddenness of appellant's conclusion to separate from his co-defendants on that night and repair—not to his own home or place of abode, but to the residence of his casual acquaintance, Dutton—in seeking a place to spend the latter part of that night, is not explained by defendant and his action in doing so is a most potent circumstantial witness in the case, since it is an old and true adage that "actions speak louder than words."

It should also be remembered that no witness testified in behalf of appellant other than himself. Surely he could have found someone by whom he might fortify his plea of not guilty. Upon the whole we are thoroughly convinced that the court did not err in submitting the necessary corroboration to the jury, pursuant to section 242 of our Criminal Code of Practice, and that the jury did not err in finding that the testimony of appellant's accomplices was sufficiently corroborated.

Wherefore, for the reasons stated, the judgment is affirmed.