**Estil COOK, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 3, 1954.

H. K. Spear, Somerset, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Chief Justice.

Appellant, Estil Cook, was jointly indicted with Billy Heath, Carl Harrison, Bobby Walden and Charles Loveless by the grand jury of Pulaski County for the crime of chicken stealing, a crime denounced by KRS 433.250(4). The indictment charged that 20 chickens of the value of $1 each and of the aggregate value of $20 were stolen from Dault Gibson and his wife, the owners of the poultry. At the joint trial of Cook, Harrison and Walden on February 6, 1954, they were found guilty and each was sentenced to the penitentiary for two years. Loveless had previously entered a plea of guilty and was given the same sentence as the others. Cook alone appeals on the ground that the verdict is contrary to the law and the evidence.

The only witness for the Commonwealth who implicated Cook in the crime was Melvin Ragles, a 15-year-old boy, who testified he was in the company of Cook, Harrison, Walden and Loveless on the night the chickens were stolen. He stated he met with them at a service station at Brown's Bluff which was operated by Billy Heath, a defendant in the indictment, and accompanied these four persons in Billy Heath's car to the village of Elihu in which the Gibsons live. At this place, according to Ragles, Cook, Harrison, Walden and Loveless got out of the car and were gone two or three hours. When they returned they had about 20 chickens, tied with strings, which they put in the back of the car on the seat. Afterwards they started back toward Billy Heath's filling station and Ragles said he left the party at a small store located on the Monticello road where it joins Highway No. 27 and waited there until he caught a ride to his home at Bronston.

On cross-examination, Ragles admitted that when Loveless mentioned that he, Cook, Harrison and Walden were "going to steal some chickens," he manifested a desire to go along with them. He also indicated that those involved in the foray were well known to him. When his four companions reached the Gibson place, he waited for them in the car while they went after the chickens. He said the chickens were placed in the back seat and all of them rode in the front seat on the return trip. He was arrested later and put in jail, charged with the same offense as Cook and the other defendants. While there the sheriff approached him and persuaded him to "tell all" that he knew. It is not shown that he was promised immunity if he "turned state's evidence," but, at any rate, the record does indicate he was not proceeded against in any manner.

Gilmore Phelps, sheriff of Pulaski County, testified that one of his deputies arrested Ragles and brought him to the sheriff's office where Ragles told him, Phelps, the same story we have outlined above. The sheriff stated that in his conversation with the boy, he told him to "come clean, to tell the truth—that the other boys weren't going to protect him and there wasn't any use in him protecting them." This the boy agreed to do after his talk with this officer.

At the close of the Commonwealth's evidence all the defendants moved for a directed verdict. Relying upon Section 241 of the Criminal Code of Practice, they contended there, as Cook maintains here, that Ragles was an accomplice and, since his evidence was not corroborated in any respect, their conviction should not stand. This motion was overruled and exceptions were saved.

Cook and his co-defendants, Harrison and Walden, all testified that they did not steal the chickens, that they knew nothing about the theft, and that they were not present at the time and place testified to by Ragles. Cook and Harrison admitted on cross-examination that each of them had been convicted of a felony. Loveless testified that only he and Ragles stole the Gibson chickens and he denied that the other defendants, Cook, Heath, Harrison and Walden, were with them at the time or that these four last-named defendants had any part in stealing the chickens. Five witnesses were introduced in rebuttal who testified that Cook's general moral reputation was bad.

The decisive question in the case at bar is whether Ragles was an accomplice of the foregoing defendants.

An "accomplice" within the meaning of Section 241, supra, is one who knowingly, voluntarily, and with common intent, unites with the principal in the commission of the crime, either by being present and joining in the criminal act as an aider and abettor, or, if absent, by advising and encouraging in its commission. Baker v. Commonwealth, 212 Ky. 50, 278 S.W. 163. The test for determining whether one is an accomplice is to weigh the evidence showing participation in or connection with the offense and to determine from such evidence whether such person could be convicted either as a principal or as an aider and abettor. Means v. Commonwealth,

238 Ky. 366, 38 S.W.2d 193; Crouch v. Commonwealth, 201 Ky. 460, 257 S.W. 20.

 We believe the evidence of Ragles makes him an accomplice within the meaning of the principles we have recited, and, having reached this conclusion, we are of the opinion that the requirements of the Code section Cook relies upon were not met. Ragles sought out and joined in with acquaintances who, according to him, perpetrated the offense. Before associating with these persons on their thieving mission, he confessed to advance knowledge that a crime was to be committed. Nevertheless, he expressed a willingness to accompany them "wherever they were going." Although he stated he stayed in the car while his companions went for the chickens, thereby attempting to suggest that he did not participate in the evil scheme, a jury could well believe he remained behind to keep a lookout and sound a warning if danger showed up. He did not depart from them until after the unlawful plan had been accomplished. If all were present from beginning to end when a crime was committed one must necessarily infer that all were ready to aid or did aid in its commission and that all were equally involved in the infringement of the law. Assistance or encouragement in the perpetration of an offense may consist of overt acts or oral expressions. Crabtree v. Commonwealth, 312 Ky. 738, 229 S.W.2d 752. We unhesitatingly conclude that these facts would dispel any claim of innocence upon the part of Ragles and, in addition, support a conviction of him as an aider and abettor of those who were found guilty in the case at bar.

It is apparent that only the testimony of Ragles implicates Cook with the taking of the chickens. To state the same proposition differently, if we eliminate the evidence of Ragles, there is no fact or circumstance proven in this case upon which to rest a conviction of Cook as to the charge in the indictment.

 "Corroboration of an accomplice" requires evidence other than, and independent of, the testimony of the accomplice, which tends to establish the existence of some fact which actually connects the accused with the commission of the offense charged in the indictment, and unless there is other evidence of that character in addition to the testimony of the accomplice, then there is no corroboration and the defendant is entitled to a peremptory instruction. Schleeter v. Commonwealth, 218 Ky. 72, 290 S.W. 1075.

 It has been shown that Ragles was an accomplice of Cook in that he aided and abetted the latter in the commission of the crime. Therefore, because there was a total absence of other evidence tending to connect Cook with the offense with which he was charged, Cook's conviction does not meet the requirements of Section 241, supra, and the lower court committed a reversible error when it refused to instruct the jury to find for Cook at the conclusion of the Commonwealth's evidence.

Wherefore, the judgment is reversed with directions that it be set aside and if, upon another trial, the evidence in substance is the same, the court will direct the jury to find defendant not guilty.