James HARRIS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 21, 1955.

Rehearing Denied Jan. 27, 1956.

Dailey & Fowler, Frankfort, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

James Harris has been convicted of the crime of pandering and sentenced to the penitentiary for three years. His appeal presents only technical questions of law.

Harris owned and operated a place called Hy-Dee-Ho Club located in Wilder, Campbell County, which was a bordello, a barroom and cafe. He was also chief of police of the town. The statute, KRS 436.040, comprehensively deals with that branch of commercialized prostitution called pandering. It enumerates eight distinct and separate modes of committing the specific crime or eight particular species of immorality intended to be

suppressed. The appellant was convicted of violating subsection (6) of the statute which fixed a penalty of confinement in the penitentiary for not less than one nor more than five years of anyone who "knowingly accepts or appropriates any money or other thing of value, without lawful consideration, from a prostitute and from the earnings from her prostitutions".

A reception room and eight bedrooms on the second floor of the establishment were set apart for prostitution and from 4 to 12 women were there nightly. Applicants for places in his dirty business were passed upon by Harris personally. A madam in charge kept a card system on which the earnings of each inmate were entered. A microphone in each room connected with Harris' desk on the first floor enabled him to keep check on the collections. He was there almost every night. The money, which amounted to $400 to $600 a day, was paid over to the madam by the prostitutes. It was divided equally between Harris and the prostitute, except when a taxicab driver procured the patron, he, the procurer, received 40 percent. This summarized evidence was given descriptively and specifically by a former madam and two doorkeepers or sentinels whose duty it was to ring an alarm bell upon the approach of state police officers. A raid on the place by state officers resulted in the arrest of the employees and women and two or three patrons present at the time. This resulted in the indictment, the local law enforcement officers having been blind to the conditions.

■ The court gave the usual instruction concerning the necessity of corroboration, stating as a matter of law that the employees who testified against the defendant were accomplices. Section 241 of the Criminal Code of Practice provides that there must be other evidence than that of accomplices "tending to connect the defendant with the commission of the offense". The appellant contends there was no such corroborative evidence, and that the trial court should have discharged him because of its absence. The authorities relied upon are older cases which held that the corroborative evidence must itself be sufficient to convict. Beginning with Williams v. Commonwealth, 257 Ky. 175, 77 S.W.2d 609, (an opinion delivered in November, 1934) the Code provision has been construed in accordance with its language, namely, that the evidence need only *tend* to connect the accused with the commission of the crime. Since then we have held the requirement of the rule is met if the corroborative evidence is of such quality that a reasonable and unprejudiced mind could conclude that it tends to establish some fact that links the accused up with the principal fact of the commission of the offense. Price v. Commonwealth, 296 Ky. 144, 176 S.W.2d 271; Cook v. Commonwealth, Ky., 273 S.W.2d 390.

■ The corroborative evidence in this case is itself almost, if not altogether, complete proof of guilt. The record shows Harris owned and operated the place. A newspaper reporter testified to the conditions and his experiences there. He wrote an article which was published in a Cincinnati newspaper describing the nefarious conditions and activities on the second floor of the club. Harris went to see him and demanded that he should go no further with his articles. A photographer's testimony was to the same effect. A state detective who went there just before the raid related what he had found. Other state police officers on the raid described the set-up of the place and the actions of prostitutes they found there. A taxicab driver testified Harris had asked him and other drivers to bring some business to his club.

Several professional bondsmen testified Harris had procured them to go on the bonds of the employee-accomplices arrested on the raid. The fact of their execution was confirmed by the records. Harris paid the stenographer for reporting their cases. The madam's husband testified that after she had been released from jail following the raid, he saw her hand Harris $350 which she had testified was the proceeds of the previous night. It was not

essential to prove the crime of pandering that the accused should receive the money directly from the prostitute. It is sufficient to constitute the offense that the money was paid to a third person (the madam, in this case) for the defendant at his direction or request. 73 C.J.S., Prostitution, § 10.

While there is really only one corroborating witness of the defendant having received the proceeds of the indiscriminate sale by these women of their bodies or as to the actual acceptance by Harris of money from their earnings as charged in the indictment, it is to be remembered that corroboration need not necessarily be by an eyewitness. It may be by evidentiary facts and circumstances. The mass of corroborating evidence heard on this trial relates to relevant and material facts, such as the presence of the prostitutes at the defendant's place of business plying their vocation. This has direct relation to the main fact and exceeds the minimum requirement. This evidence substantiates the testimony of the employees.

In the face of this overwhelming evidence of maintaining highly commercialized and systematized pandering, the defendant availed himself of the privilege granted the most lawless citizen to remain silent. His defense was to impeach his former employees by proving their bad reputation (which was hardly necessary because their base sensibilities were shown by their own testimony) and that some of them had made contradictory statements, which really went only to the question of their motives.

The indictment is in the language of the statute and describes the offense to have been committed by the defendant having an interest in the Hy-Dee-Ho Club as a house of prostitution at a location specifically stated, and as having accepted money without lawful consideration from prostitutes therein whose names were unknown to the grand jury. The sufficiency of the indictment is not challenged. The defendant filed a motion for a bill of particulars seeking to learn the names of the women, the amounts of money received from them and the time and places where he was alleged to have committed the crime of pandering. The appellant contends it was prejudicial error to overrule his motion. He relies upon cases which lay down the general rule that a person accused of crime has the right to a specification of the acts on which the prosecution intends to rely when the indictment itself is not sufficient to enable him to prepare to meet the charge or to safeguard his rights. An illustrative case cited is Milburn v. Commonwealth, 204 Ky. 691, 265 S.W. 25, in which it was held where a warrant charging the unlawful sale of intoxicating liquor did not name the purchaser, the court should have required the Commonwealth to furnish the name if the defendant had asked for a bill of particulars. The cases holding indictments demurrable for not naming the purchasers were where the indictments did not declare the purchasers were unknown to the grand jury. Sprinkles v. Commonwealth, 301 Ky. 161, 191 S.W.2d 218.

Generally, the granting or refusing of a motion for a bill of particulars is considered to be a matter within the sound discretion of the trial court. It is only when it appears that the defendant is liable to be surprised by evidence which he is unprepared to meet that the court should order the prosecution to furnish a bill of particulars. A corollary rule is that the particulars should not be required when the motion appears to be merely an exploratory maneuver or when the accused apparently has knowledge of the facts or where the means of obtaining the facts are just as accessible to him as to the prosecution. Commonwealth v. Chesapeake & O. Railway Co., 128 Ky. 749, 110 S.W. 253; Nickens v. Commonwealth, 228 Ky. 477, 15 S.W.2d 261; Commonwealth v. Welch, Ky., 243 S.W.2d 909.

There may be indictments in this class of cases where it appears that

the naming or identification of a woman should be furnished; for example, where the charge is of an isolated instance the Commonwealth may be required, if it can, to furnish facts and circumstances whereby her identity may be established in order that the defendant may adequately prepare his defense. The course of the trial may test the correctness of having overruled the motion. The court may find his ruling may have resulted in the defendant being handicapped to the degree that it justifies the granting of a new trial. Cf. Johnston v. Commonwealth, 276 Ky. 615, 124 S.W.2d 1035. In this case the grand jury stated the names of the women were unknown to it. Moreover, it was proved, as we have stated, that the defendant had kept detailed and personal accounts with the prostitutes who shared their illicit earnings with him. None of them was called to the witness stand although doubtless they were available to the defendant. The court properly denied the bill of particulars.

During the trial the court and lawyers retired to the court's chambers or a jury room on six occasions to hear arguments and consider the competency of evidence proposed to be introduced and the defendant's motion for a directed verdict. The defendant was not present except perhaps on one occasion. It is now claimed that these proceedings in his absence violated his constitutional right to be heard by himself and counsel and to meet the witnesses face to face, Sec. 11, Kentucky Constitution, and the requirement of Criminal Code of Practice, Sec. 183, that on the trial for a felony the "defendant must be present".

This court has been careful to preserve the right of a defendant to be present at every stage of his trial, beginning with the swearing of the jury and ending with the return of the verdict. But the cases cited by the appellant to sustain his position presented entirely different factual situations. Here the defendant's lawyer was present, of course, at all of these consultations and the preliminary examination of proposed witnesses. His attorney never suggested that his client should be there. We had a similar question raised in Hoskins v. Commonwealth, 188 Ky. 80, 221 S.W. 230. Doubt was expressed that a preliminary examination of a witness for the purpose of determining the admissibility of his testimony may properly be regarded as part of the trial, but it was held the defendant had waived his right to be present and in any event his substantial rights were not prejudiced. So it is in this case.

It is a general rule that the accused's presence is not necessary during such consultations or preliminary proceedings or hearing on motions which do not affect the question of his guilt or innocence. 23 C.J.S., Criminal Law, § 974 b. Certainly the right to be present in person does not extend to the reception of legal arguments. If it did, the court could not consider briefs filed in the case without the accused being present. This claim of error is unfounded.

The instruction submitting the question of the defendant's guilt reads in part:

"If the jury believe from the evidence * * * that the defendant, James Harris, * * * had some interest in the Hy-Dee-Ho Club, a house of prostitution located on the premises designated as No. 19 Licking Pike in the City of Wilder, the exact nature and extent of which interest was unknown * * *."

This followed the language of the indictment. It is claimed that the court invaded the province of the jury as the instruction unqualifiedly declared the club to be a house of prostitution. It was. Undeniably so. Perhaps technically it would have been better to have preceded "house of prostitution" with the phrase "and that it was." But the accused was not charged with maintaining such a place. He was on trial for "accepting and appropriating" money without lawful consideration from prostitutes; and the state-

ment in the instruction, as it was in the indictment, merely described the place at which the offense was committed. The claim of error is without merit.

The judgment is affirmed.