**COMMONWEALTH of Kentucky, Appellant,**

v.

**Joseph Vincent TRUGLIO, Appellee.**

Court of Appeals of Kentucky.

Oct. 11, 1963.

John B. Breckinridge, Atty. Gen., James G. Osborne, Asst. Atty. Gen., Frankfort, R. K. Grant, Asst. Com. Atty., Louisville, for appellant.

Frank E. Haddad, Jr., Louisville, for appellee.

STEWART, Judge.

Appellee, Joseph Vincent Truglio, was tried twice on a charge of armed robbery. In both trials he was convicted and given a sentence of life imprisonment; in both cases his motion for a new trial was sustained by the trial court. The reason given for granting the new trial was there was insufficient proof tending to connect him with the commission of the offense of which he was accused, except the evidence given by his two codefendants who were accomplices to the act, both of whom have been convicted on guilty pleas. The Commonwealth instituted this proceeding asking for a certification of the law on the question. See KRS 21.140(3) (formerly section 337 of the Criminal Code of Practice).

The two alleged accomplices were Michael Rentschler and Calvin Carmen. At appellee's first trial, Rentschler testified appellee furnished the guns for the robbery and drove him and Carmen to and from the store where the crime was committed. He further stated that the money was split among Carmen, appellee and him. Carmen, a reluctant, even hostile, witness, claimed he walked to the situs of the robbery, held up the place alone, kept all the money him-self, and rode home on the bus. He did add that he obtained his gun from appellee's car.

At the first trial, the two persons who were in the store at the time it was held up positively identified Rentschler and Carmen as the two men who perpetrated the robbery. They said they did not see appellee or any third person in or near the store. The Commonwealth also introduced a witness, who was a sister of the accomplice Rentschler, and she testified she had seen appellee with her brother and Carmen two hours prior to the robbery. Her boy friend testified he drove appellee from the home of Rentschler about three hours after the robbery.

This same evidence was presented at the second trial. However, the Commonwealth then produced a new witness, Terrence Belcher, who had been an inmate in the Jefferson County jail during the first trial. He testified he overheard a conversation between appellee and Carmen in the waiting room of the jail on the eve of appellee's and Carmen's departure from the jail for the courtroom. Belcher stated they "were talking about a robbery that had happened," and that Carmen was requested by appellee "to say nothing about Joe Truglio furnishing the guns and driving the car during *that* robbery." After both men came back from the courtroom, according to Belcher, and we quote his exact statement, " * * * they had another conversation in which Joe shook the boy's hand and told him how glad he was that he didn't implicate him in the robbery. He told Truglio that he did not tell the Judge that Joe supplied the weapons and the car."

Belcher, at the time he testified, was under federal sentence for a violation of the Dyer Act. In addition he was serving time on a grand larceny charge which had been amended to petit larceny. It appears the reduction of the charge was made by the Commonwealth after he had given the law-enforcement authorities a statement against appellee. When asked whether the reduction was made in consideration of giving the

statement against appellee, he refused to answer, relying upon the Fifth Amendment to the federal Constitution. However, he did remark he was testifying against appellee because he was angry at him for refusing to get him out of jail on bond.

Appellee did not introduce any evidence.

This case came to trial the second time in October, 1962, at which time the Criminal Code of Practice was in effect. Section 241 thereof reads: "A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

In Cook v. Commonwealth, Ky., 273 S.W. 2d 390, 392, this Court commenting on that section used these words: " 'Corroboration of an accomplice' requires evidence other than, and independent of, the testimony of the accomplice, which tends to establish the existence of some fact which actually connects the accused with the commission of the offense charged in the indictment, and unless there is other evidence of that character in addition to the testimony of the accomplice, then there is no corroboration and the defendant is entitled to a peremptory instruction." (Citation omitted.)

In Harris v. Commonwealth, Ky., 285 S. W.2d 489, 491, it was said: " * * * we have held the requirement of the rule is met if the corroborative evidence is of such quality that a reasonable and unprejudiced mind could conclude that it tends to establish some fact that links the accused up with the principal fact of the commission of the offense." (Citation omitted.)

The Commonwealth contends that, as a matter of law, sufficient evidence was introduced which tended to connect appellee with the commission of the crime, without the testimony of the accomplices. This evidence, argues the Commonwealth, placed appellee in the company of the accomplices a short time before and a short time after the commission of the crime; and that the first conversation supposedly overheard by Belcher at the jail conclusively shows appellee supplied the guns and drove the car for the commission of the crime.

It was established appellee was in the company of the robbers two hours prior, and approximately three hours subsequent, to the commission of the offense, and the Commonwealth insists such evidence, standing alone, was sufficient corroborative evidence of guilt. In Luster and Smith v. Commonwealth, Ky., 333 S.W.2d 267, the only proof there other than that of the accomplice, Luster, which tended to link Smith in any way with the offense of which he was accused, was testimony that Smith was with Luster early in the evening on the night the crime was committed and that he slept that night at the home of Luster. The Court held that this was not sufficient corroboration to connect Smith with the commission of the offense charged.

The trial court was of the opinion that testimony relative to the first portion of the alleged conversation he had with appellee, while mentioning "a robbery that had happened," failed to identify appellee with the commission of the offense "with which he was charged in the indictment." We are inclined to adopt this view.

■■ The facts in the Luster and Smith case are analogous to the facts in the case at bar. Guilt may not be established, unless other incriminating evidence appears, by proof of the association of an accused with the perpetrators of a crime before and after its commission. Therefore, in the present state of the record before us, it is our opinion there was a lack of corroborative testimony which tended to link up appellee with the commission of the offense of which he was charged.

Wherefore, the law is certified.