**William CREECH, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 3, 1967.

Bernard J. Blau, Newport, for appellant.

Robert Matthews, Atty. Gen., Harold T. Hotopp, Asst. Atty. Gen., Frankfort, Frank Benton, III, Comonwealth's Atty., Newport, for appellee.

DAVIS, Commissioner.

William Creech was found guilty of being an accessory before the fact to the crime of armed assault with intent to rob. KRS 431.160; 433.150. The jury's verdict fixed his punishment at imprisonment for 21 years. Upon this appeal he presents several purported grounds for reversal, but we deem it necessary to consider only whether the Commonwealth presented sufficient evidence tending to connect Creech with the commission of the offense, apart from the evidence of two accomplices. RCr 9.62.

As related by the accomplices, Francis Brossart and James Lucas, the appellant Creech and Lucas arranged for Brossart (a somewhat mentally-retarded youth of 17) to undertake an armed robbery of Bernard Finkelman. Creech and Lucas outlined the plans for the crime to Brossart, and obtained a pistol which Creech delivered to Brossart, although it was not Creech's weapon. The plan was for Brossart to

conceal himself in the automobile of Finkelman, armed with the pistol, and rob him when he unsuspectingly entered the car. Creech and Lucas were to stand by in concealment to assist Brossart to depart the crime-scene with impunity. The plan misfired, literally. Brossart shot himself with the gun in his fumbling effort to rob Finkelman. Even so, Creech and Lucas succeeded in spiriting Brossart from the scene to a temporary refuge, from which Brossart was shortly routed by the police.

About an hour or hour-and-a-half before the assault Brossart and Creech were walking together on Brighton Street, near Tenth Street in Newport; this point was about a block from Finkelman's store, and about three blocks from Creech's residence. As they walked together they were observed by a detective, who interrupted the stroll by taking Brossart to police headquarters for questioning; Creech was not taken by the police, and allegedly went on home. The police released Brossart and he undertook the robbery later that same night, March 3, 1966.

On March 4, 1966, the police picked up Creech and questioned him briefly; he was then being charged (although not formally) with contributing to the delinquency of Brossart, a minor. It was some few days later that the police again had Creech come into headquarters for an interview. Detective Patrick Ciafardini testified that he advised Creech of his right to have counsel and to remain silent, as well as of the fact that anything he might say could be used against him. The detective said that Creech informed him that he did not desire to make any statement, and that no statement was obtained from him. It is apparent that the detective used the term "statement" in the sense of a formal written instrument.

Despite Creech's having informed the detective of his desire to remain silent, Brossart was brought into Creech's presence by the detective and was asked to relate what Brossart had theretofore confessed; the confession of Brossart implicated Creech fully. As a part of Brossart's recital he asserted that Creech had delivered to him the pistol used in the attempted robbery. At this point the detective inquired of Creech: "Bill, is that right?" Then, according to Officer Ciafardini, Creech responded: "O.K., Pat. Giving him a gun would be like putting a pack of matches in a kid's hands." We observe that the quoted statements are as they appear in the record as it relates to voir dire examination, out of the presence of the jury. The trial court overruled Creech's objection to the admission of this reference to "putting a pack of matches in a kid's hands."

When the detective gave his evidence before the jury the version of the incident was slightly modified. He did not relate that he had posed the question: "Bill, is that right?" and in recounting what Creech had said phrased it this way: "Well, Pat, it was just like putting a pack of matches in a kid's hands."

There is really nothing else in the entire record which may be deemed as corroborative of the testimony of the two accomplices. It is our view that the bare statement, whether it was uttered in the words recorded on the voir dire examination, or as stated in the testimony before the jury, falls short of meeting the corroborative requirements imposed by RCr 9.62. The bare statement is susceptible of various interpretations, most of them as consistent with an innocent proclamation as with an incriminating one. This is particularly so in light of the fact that Brossart was shown to be a youth of retarded mentality. The statement could mean that Creech regarded the confession obtained by the police from Brossart as having been easily accomplished, or it could indicate Creech's idea of pointing out that no sensible person would have handed Brossart a gun. We are not able to read into the statement anything tending to connect Creech with the commission of the offense.

■ This court has dealt often with the sufficiency of corroborative testimony in accomplice cases. See 6 Ky.Digest Criminal Law ⊙511. Each case rests upon its particular facts as those facts may or not fall within the legal concepts. Examples of cases in which the corroborative testimony has been held insufficient include Daggit v. Commonwealth, 314 Ky. 721, 237 S.W.2d 49; Bryant v. Commonwealth, Ky., 277 S.W.2d 55; Commonwealth v. Truglio, Ky., 371 S.W.2d 648; Hartsock v. Commonwealth, Ky., 382 S.W.2d 861. Without undertaking an analysis of these and other cases of similar import, we consider it sufficient to say that we are persuaded that they impel the conclusion that the evidence at hand was insufficient to corroborate the testimony of the accomplices within the purview of RCr 9.62.

■ We need not decide whether the rationale of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and cases of that tenor was applicable to the trial at which Creech was convicted. It is certain that the principles enunciated in Escobedo, and in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, will be applicable in the event of another trial. See Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

■ It appears, therefore, that the court should not admit Creech's statement relating to the "pack of matches" since it was elicited while Creech was in custody and after he had affirmatively declared that he did not desire to make any statement.

The other alleged errors are deemed to be without merit and will not be discussed herein.

The judgment is reversed for proceedings consistent with the opinion.

All concur.