KEITH MURPHY, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

426 S.W.2d 509.

(*Nashville,* December Term, 1967.)

Opinion filed March 29, 1968.

J. H. RENEAU, III, Celina, and JOHN HUNTER SMITH, Livingston, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, and ROBERT F. HEDGEPATH, Assistant Attorney General, Nashville, and BAXTER T. KEY, JR., District Attorney General, Carthage, prosecuted the case in the trial court, for defendant in error.

MR. JUSTICE CRESON delivered the opinion of the Court.

This appeal comes from the Criminal Court of Overton County, Tennessee. The parties will be referred to herein as they appeared in the trial court; that is, plain-

tiff in error Keith Murphy as defendant, and defendant in error as the State.

The defendant was indicted on June 4, 1965, for the crime of murder in the first degree while in the perpetration of the crime of arson. He was tried on August 3, 1965. The defendant was found guilty as charged in the indictment and sentenced to twenty years in the State Penitentiary. On appeal, his conviction was reversed, on the basis that the sentence was not a permissible one for the offense of which he was convicted.

The defendant was retried on November 1, and 2, 1966. He was again found guilty of murder in the first degree. The punishment of the defendant, on this second trial, was fixed at fifty years in the State Penitentiary. Judgment was entered in accord with the jury's verdict. Motion for new trial was timely made and overruled.

The deceased victim, William Daniel Golden, was about ninety years of age at the time of his death by homicide. He lived with his thirty-three year old son in a mobile home on a farm near Crawford, Tennessee, in Overton County. The victim's son returned from work on the evening of March 24, 1965, and discovered the mobile home on fire, with a large amount of black smoke being emitted from the fire. The charred remains of the victim's body were later recovered, along with certain personal items. An autopsy revealed that the deceased had died of carbon monoxide poisoning caused by the fire.

An investigation of the immediate premises yielded the recovery of a lump of white material, approximately two inches in diameter, which appeared to be melted plastic. It was found between a set of the mobile home's

wheels. At the same spot, the soil was damp with petroleum, which was different in chemical composition from that used by the victim in his trailer.

The defendant confessed that he and another named person placed an oil burner between the tires of the mobile home. The primitive fire bomb was a white Purex bottle filled with fuel oil and ignited with a wick from an old felt hat. According to the defendant, the fire was an act of reprisal against the victim's son for interfering in another named person's liquor business. On appeal, the defendant's assignments of error require an examination of (1) the admissibility of the defendant's confession, (2) the status of a mobile home under the arson statutes, and (3) alleged limitations on sentencing on retrial.

■ Errors 1 and 2 contend that the verdict was contrary to the law and to the evidence. The general rule in Tennessee is that the jury's verdict of guilty, approved by the trial judge, establishes the credibility of the witnesses supporting the verdict, displaces the presumption of innocence that attached to the defendant in the trial court and raises a presumption of guilt; putting on the defendant the burden of showing, on appeal, that the evidence preponderates against the verdict and in favor of the innocence of the accused. *Cooper v. State* (1909) 123 Tenn. 37, 138 S.W. 826; *Holt v. State* (1962) 210 Tenn. 188, 357 S.W.2d 57; *McBee v. State* (1963) 213 Tenn. 15, 372 S.W.2d 173.

■ A review of the record makes it clear to this Court that the evidence does not preponderate against the verdict if the defendant's confession was properly admitted. Thus, we will next examine that question.

■ In assignments of error 3, 4 and 5, the defendant alleges that the trial court erred in allowing the County Sheriff, an Assistant State Fire Marshal, and an Assistant Attorney General to testify regarding certain confessions, admissions, or statements made by the defendant without a prior warning of his constitutional rights. The defendant urges that *Miranda v. State of Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 is controlling in this regard. That case places upon the prosecution the burden of establishing the admissibility of testimony concerning admissions of a defendant resulting from custodial interrogation when it attempts to introduce the statements into evidence. For the State to establish admissibility, it must, at the outset, show that the defendant was, prior to his making these statements, advised (1) that he could remain silent, (2) that anything he said could be used against him, (3) that he had a right to counsel, and (4) that if he could not afford counsel, counsel would be provided for him by the State.

■ The record reflects that ample warning was given to the defendant of the first three items discussed above, but there is no evidence that the defendant, an indigent person, was advised of his right to court appointed counsel. The trial judge made a determination, however, that the confession was freely and voluntarily made. There is more than ample support for that ruling in the record. Nevertheless, if the standards set forth in *Miranda* were applicable in this case, a reversal would be necessary. It is our conclusion that the decision in *Miranda* does not apply to this case, since the original proceedings began prior to the *Miranda* decision. Thus, the test for admissibility was the so-called voluntariness test.

In the present case, the confession was admitted into evidence at the original trial, which occurred before the *Miranda* decision. At the retrial, which was after *Miranda,* the same confession was again admitted. The issue presented is whether or not the *Miranda* standards determining admissibility of confessions are applicable to retrials of cases which were originally tried before the *Miranda* decision; date, June 13, 1966.

Immediately after the *Miranda* decision, the United States Supreme Court, in *Johnson v. State of New Jersey* (1966) 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, speaking through Chief Justice Warren, held that *Escobedo v. State of Illinois* (1964) 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, would affect those cases in which the trial began after June 22, 1964, the date of that decision and that *Miranda* would affect only those cases in which the trial began after June 13, 1966. In addition, the Court held that cases on direct appeal would not be affected if they had been decided before *Escobedo* and *Miranda,* stating:

"(We) conclude that *Escobedo* and *Miranda* should apply only to cases commenced after those decisions were announced."

It must be noted that while the Court attempted to cover all situations, they apparently failed regarding the specific issue now before this Court. Did the Court infer that a retrial was a new trial? Did they assume that the retrial was part of the original proceedings? The answers to these questions have bothered other State courts and a split opinion has developed. Before looking at the reasoning of these other courts, an analysis of *Johnson*

will be made to determine if the reasoning used there can be extended to cover the present issue.

Even though *Miranda* concerned a constitutional guarantee, the Court was not hesitant in denying application of the principle of retroactivity. The Court reasoned that "(I)n criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application.'" Analogous cases were relied on for this point: *Linkletter v. Walker* (1965) 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, refused to apply the *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 search and seizure rule retroactively; and *Tehan v. United States ex rel Shott* (1966) 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, refused to apply retroactively the *Griffin v. State of California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 rule forbidding prosecutors and judges from commenting on the failure of defendants to take the stand in their own behalf.

In *Johnson,* Chief Justice Warren pointed out that *Escobedo* and *Miranda,* while guarding against the possibility of unreasonable statements being received in evidence, "encompass situations in which the danger is not necessarily as great as when the accused is subjected to overt and obvious coercion." For that reason the Court was unwilling to condemn the entire process of interrogation relied upon by law enforcement agencies prior to these decisions. He stated:

> "At the same time, retroactive application of *Escobedo* and *Miranda* would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by

trustworthy evidence in conformity with previously announced constitutional standards."

The Court felt that the danger was not as great here as when the accused was subject to overt and obvious coercion. Even under the voluntariness test, the failure-to-warn element of *Miranda* was considered in determining if the confession was, in fact, voluntary.

The Court considered the question of *Miranda's* application to cases on direct appeal at the time of that decision and reasoned that:

"Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in violation of these standards may not be used against an accused. Prospective application only to trials begun after the standards were announced is particularly appropriate here. Authorities attempting to protect the privilege have not been apprised heretofore of the specific safeguards which are now obligatory. Consequently they have adopted devices which, although below the constitutional minimum, were not intentional evasions of the requirements of the privilege. In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained in trials preceding *Escobedo* and *Miranda* would impose an unjustifiable burden on the administration of justice.

At the same time, we do not find any persuasive reason to extend *Escobedo* and *Miranda* to cases tried before those decisions were announced, even though the cases may still be on direct appeal."

State courts, looking at the language of *Johnson,* have been bothered by the phrase, "cases commenced after." Decisions of several states have held that the *Miranda* principles would apply in the retrial of a case where the original trial was prior to June 13, 1966. *State of Arizona v. Brock* (1966) 101 Ariz. 168, 416 P.2d 601; *State of Wisconsin v. Shoffner* (1966) 31 Wis.2d 412, 143 N.W. 2d 458; *Creech v. Commonwealth* (Ky.1967) 412 S.W.2d 245; *People of State of New York v. Sayers* (1967) 28 A.D.2d 227, 284 N.Y.S.2d 481; *People v. Doherty* (Cal. 1967) 59 Cal.Rptr. 857, 429 P.2d 177; *State of Hawaii v. Ruiz* (1966) 49 Haw. 504, 421 P.2d 305; *Gibson v. United States* (1966—5th Cir.) 363 F.2d 146; *United States ex rel. Pierce v. Pinto* (D.C.1966) 259 F.Supp. 729, affirmed 374 F.2d 472 (3rd Cir.).

Other courts, basing their conclusions on *Johnson,* have held that the retrial was not a new trial, but was merely part of the original proceeding. In *Jenkins v. State of Delaware* (1967) 230 A.2d 262, the Delaware Supreme Court analyzed *Johnson* and reasoned that although de novo, a new trial is not a new case, but only a continuation of the original until the judgment is final. Consequently, they concluded that *"Johnson* does not require us to change the governing rules so drastically, midway between the first trial and the retrial of the same case."

The Supreme Court in Illinois and New Jersey also refused to conclude that a defendant in a post-*Miranda* retrial was a "future defendant." *People of State of Illinois v. Worley* (1967) 37 Ill.2d 439, 227 N.E.2d 746; *State of New Jersey v. Vigliano* (1967) 50 N.J. 51, 232 A.2d 129. Those Courts reasoned as did the dissent in *State of Wisconsin v. Shoffner,* supra, and *State of Ari-*

*zona v. Brock,* supra, that since the purpose of *Miranda* was to upgrade police practices, and was not intended to reach back to challenge these otherwise legal procedures, *Miranda* should not apply at a retrial where the practices of the law enforcement officials were legally acceptable at the trial, the time of the criminal act, the time of the custodial interrogation, and at the commencement of the original trial. In addition, the Court should not use different rules at a retrial than at the original trial, since it was the intention of the United States Supreme Court in *Johnson* to give stability and uniformity to cases prior to *Miranda,* for the reason that it would be contrary to fair play and would work an extreme hardship on law enforcement officers.

In summary, the Court in *Johnson* sought to give effect to *Miranda's* directive that application of new standards would be prospective. Consideration was thus given to (1) the original purpose for setting and announcing new standards in *Miranda,* (2) the reliance placed upon pre-*Miranda* standards, and (3) the potentially serious disruptive effects on the administration of justice.

 In accordance with those principles, it is the decision of this Court that for the purposes of determining the admissibility standards to be applied to confessions, the retrial is a continuation of the original proceeding. Since the defendant's original trial began before the decision in *Miranda,* that case is not controlling.

In assignment No. 6 the defendant challenges the voluntariness of the confession, citing as authority the recent case of *Clewis v. State of Texas* (1967) 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423. That case reiterated

the principle that in determining voluntariness of a confession the court should look to the "totality of the circumstances."

The factual situation in the defendant's case is not analogous to the circumstances considered by the Court in *Clewis*. Defendant Clewis was held in custody for nine days; he was never advised of his right to consult counsel or have counsel appointed, or of his right to remain silent; counsel was never present during the interrogation; the interrogation was in violation of the Texas statute requiring a defendant to be immediately taken before a magistrate; his faculties were substantially impaired; and he was a Negro with only a fifth-grade education, who had experienced no prior trouble with the law.

In the case presently before us, defendant Murphy was held for only three days prior to the time he confessed, with at least one of those days being spent sobering up. The record shows that he was advised several times of his right to remain silent and of his right to consult with counsel. The defendant's brief stresses the fact that he was not in the proper condition to be subjected to questioning and to make a voluntary statement because his confession was preceded by his "breaking down". The record indicates that the defendant did suffer emotional strain and did cry before, and during, his confession. It would seem that such emotional reaction would naturally accompany such a confession. If the defendant could matter-of-factly admit his guilt to such an atrocious act, he would certainly be suspect of mental abnormality.

Defendant complains in assignment No. 7 that the trial court erred in admitting the confession prior to

the introduction of some evidence of the corpus delicti. The general rule in this jurisdiction is that this procedure admits to no more than harmless error where the corpus delicti is later established. *Ashby v. State* (1911) 124 Tenn. 684, 139 S.W. 872; *Kyle v. State* (1961) 208 Tenn. 170, 344 S.W.2d 537. The corpus delicti was established later in the trial by evidence showing: (1) that the victim had burned to death; (2) that the fire's origin was arsonous, and (3) that there were no indications of other possible causes of the fire.

In assignment No. 8 the defendant contends that the facts do not support a charge of arson, and thus, one of the elements of a felony murder is missing. He argues that a mobile home is not a house or structure within the statutory definition of arson in T.C.A. sec. 39-501. He asserts that a mobile home is a motor vehicle under Tennessee's Vehicle Registration Law, and thus this burning falls under T.C.A. sec. 39-504; although the language in that statute does not specifically mention arson.

The victim's mobile home had a phone line attached; was connected by pipe to a Butane tank placed several feet away; and, for all purposes, was the victim's permanent home. This particular mobile home was a "structure" under T.C.A. sec. 39-501, since it had become a fixture attached to real estate. Being such a structure, the crime was a homicide committed in perpetration of arson, a felony; and conviction of murder in the first degree was proper under T.C.A. sec. 39-2402.

Assignment of error No. 9 objects to the instruction by the trial court that the minimum penalty was "20 years and 1 day" vis-a-vis the statutory language of

"some period over 20 years". T.C.A. sec. 39-2406. If this terminology was misleading to the jury, it was adequately corrected when the trial court reinstructed the jury.

 The defendant further argues in this assignment that it is a violation of due process under the 14th Amendment of the Federal Constitution to impose a harsher penalty on retrial than at the original trial. Here, the defendant received a sentence of 20 years at his original trial and 50 years upon retrial. This Court considered a similar contention involving double jeopardy in *State ex rel. Austin v. Johnson* (1966) 218 Tenn. 433, 404 S.W.2d 244, where this Court said:

> "(W)hen the accused, himself, procures a judgment to be set aside upon his own initiative and he voluntarily accepts the result, then he cannot by his own act avoid the jeopardy in which he stands and then assert it as a bar to a subsequent jeopardy."

Similarly, if the defendant seeks a new trial, he must be prepared to face a new court and a new jury without limitations being placed on their decision.

If defendant's contention was taken as correct, he could technically escape further prosecution. His initial conviction was reversed and a new trial granted because the jury's verdict of 20 years was less than the minimum statutory sentence of "some period over 20 years." If defendant's argument were accepted, the jury would be precluded from awarding a sentence of more than 20 years. Since they could not fix one for 20 years or less, no sentence would be permissible.

All errors are overruled and the judgment of the trial court in approving the verdict of the jury is affirmed. The costs of this appeal are assessed against the defendant.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.