## JENKINS *v.* DELAWARE.

No. 748.   Argued March 5, 1969.—Decided June 2, 1969.

*Henry N. Herndon, Jr.,* argued the cause and filed a brief for petitioner.

*Jay H. Conner,* Deputy Attorney General of Delaware, argued the cause and filed a brief for respondent.

A brief as *amicus curiae* urging reversal was filed for Henry A. Vigliano.

*Louis J. Lefkowitz,* Attorney General, *pro se, Samuel A. Hirshowitz,* First Assistant Attorney General, and *Amy Juviler,* Assistant Attorney General, filed a brief for the Attorney General of New York as *amicus curiae* urging affirmance.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

In *Johnson v. New Jersey,* 384 U. S. 719 (1966), we held that *Miranda* v. *Arizona,* 384 U. S. 436 (1966), "applies only to cases in which the trial began after the date of our [*Miranda*] decision . . . ." 384 U. S., at 721. In this case, we must decide whether *Miranda's* standards for determining the admissibility of in-custody statements apply to post-*Miranda* retrials [1] of cases

---

[1] The word "retrial" is used in this opinion to refer only to a subsequent trial of a defendant whose original trial for the same conduct commenced prior to June 13, 1966, the day on which *Miranda* was announced.

originally tried prior to that decision.[2]  We hold that they do not.

Petitioner was arrested on the morning of March 17, 1965, as a murder suspect, and was interrogated on three separate occasions, at 11:30 a. m., 2:50 p. m., and 7:05 p. m.  Although indigent, he was not advised that he had the right to have an attorney present at the State's expense.  Approximately 10 minutes after the evening interrogation began, petitioner gave the police a statement in which he admitted struggling with the victim during a burglary the preceding evening.

Petitioner's first trial commenced on January 13, 1966. He did not take the stand, but his incriminating statement was admitted into evidence.  The jury found him guilty of murder in the first degree and burglary in the fourth degree.  Disregarding the jury's recommendation, the trial court sentenced him to death.  During the pendency of petitioner's appeal to the Supreme Court of Delaware, we decided *Miranda* and *Johnson*.  In reversing petitioner's conviction on various state grounds, the Delaware Supreme Court also determined, *sua sponte,* that under *Johnson* petitioner's statement, which was obtained without fully advising him of his constitutional rights, would be admissible at his retrial.  —— Del. ——, 230 A. 2d 262 (1967).  It reasoned that the retrial would be a mere continuation of the case originally commenced prior to our decision in *Miranda.*

Petitioner's second trial began on October 2, 1967.  He was convicted of second degree murder and sentenced to life imprisonment.  The Supreme Court of Delaware affirmed, again rejecting petitioner's argument that under *Johnson* his incriminating statement was inadmissible at his retrial.  —— Del. ——, 240 A. 2d 146 (1968).  Because

---

[2] Petitioner's remaining contentions have been adequately resolved by the court below.  See *Jenkins* v. *State,* —— Del. ——, 230 A. 2d 262 (1967), and *Jenkins* v. *State,* —— Del. ——, 240 A. 2d 146 (1968).

of a disagreement among state courts over this issue,[3] we granted certiorari. 393 U. S. 950 (1968). For the reasons stated below, we affirm.

Petitioner and the decisions he relies upon[4] emphasize our references in *Johnson* to "trials" commenced before the date *Miranda* was decided and our stated concern for the reliance placed on pre-*Miranda* standards by trial courts as well as by law enforcement officers. Peti-

---

[3] At least eight States, including Delaware, decline to apply *Miranda* to post-*Miranda* retrials of cases originally tried prior to that decision. See *People* v. *Worley,* 37 Ill. 2d 439, 227 N. E. 2d 746 (1967) (dictum); *Boone* v. *State,* 3 Md. App. 11, 237 A. 2d 787 (Md. Ct. Sp. App.) (dictum), cert. to Md. Ct. App. denied, 393 U. S. 872 (1968); *Chapman* v. *State,* 282 Minn. 13, 162 N. W. 2d 698 (1968); *State* v. *Vigliano,* 50 N. J. 51, 232 A. 2d 129 (1967) (dictum); *People* v. *Sayers,* 22 N. Y. 2d 571, 240 N. E. 2d 540 (1968); *State* v. *Lewis,* 274 N. C. 438, 164 S. E. 2d 177 (1968) (dictum); *Murphy* v. *State,* 221 Tenn. 351, 426 S. W. 2d 509 (1968).

At least nine other States have indicated in dicta that *Miranda* should be applied to such retrials. See *Smith* v. *State,* 282 Ala. 268, 210 So. 2d 826 (1968); *State* v. *Brock,* 101 Ariz. 168, 416 P. 2d 601 (1966); *People* v. *Doherty,* 67 Cal. 2d 9, 429 P. 2d 177 (1967); *State* v. *Ruiz,* 49 Haw. 504, 421 P. 2d 305 (1966); *Dell* v. *State,* 249 Ind. 231, 231 N. E. 2d 522 (1967); *State* v. *McCarther,* 197 Kan. 279, 416 P. 2d 290 (1966); *Creech* v. *Commonwealth,* 412 S. W. 2d 245 (Ct. App. Ky. 1967); *State* v. *Shoffner,* 31 Wis. 2d 412, 143 N. W. 2d 458 (1966). In *State* v. *Bradshaw,* 101 R. I. 233, 237, n. 1, 221 A. 2d 815, 817, n. 1 (1966), the court expressly declined to pass on the issue in an opinion reversing a conviction on other grounds, but it nevertheless suggested that under *Johnson* the defendant's statement might not be admissible at his retrial.

The United States Court of Appeals for the Seventh Circuit has held *Miranda* applicable, *United States* v. *Phillips,* 401 F. 2d 301 (C. A. 7th Cir. 1968); and that holding is supported by dicta in at least three other circuits. See *United States* v. *Young,* 388 F. 2d 675 (C. A. 9th Cir. 1968); *Virgin Islands* v. *Lovell,* 378 F. 2d 799, 802, n. 4 (C. A. 3d Cir. 1967); *Gibson* v. *United States,* 363 F. 2d 146 (C. A. 5th Cir. 1966). Without discussion, the Fourth Circuit appears to have reached a contrary result by implication. *Moorer* v. *South Carolina,* 368 F. 2d 458 (C. A. 4th Cir. 1966).

[4] *E. g., United States* v. *Phillips, supra; People* v. *Doherty, supra.*

tioner argues that this "studied" focus on the trial process indicates that we intended *Miranda* to be applied to retrials, which, he insists, begin that process anew. As Delaware correctly points out, however, more than once we stated our holding in *Johnson* in terms of "cases" commenced before the date of *Miranda.* See 384 U. S., at 733. Delaware and the authorities it relies upon [5] argue that, since the word "case" usually incorporates all the judicial proceedings against an accused, a retrial is not the "commencement" of a case. Delaware also quotes our statement that only "[f]uture defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test." *Id.*, at 732. Delaware suggests that petitioner, who was tried six months before *Miranda,* cannot be regarded as a "future" defendant within the meaning of *Johnson.* That there is language in *Johnson* supporting the positions of both petitioner and respondent demonstrates what some courts and commentators have readily recognized: in that decision, we did not consider the applicability of *Miranda* to retrials.[6] The issue simply was not presented.

Petitioner buttresses his interpretation of *Johnson* by arguing that *Miranda* must be applied to retrials in order to insure the uniform treatment of individuals similarly situated. If it is not applied, he points out, it is possible that different standards for the protection of constitutional rights could be applied to two defendants simultaneously tried in the same courthouse for similar

---

[5] *E. g., People* v. *Worley, supra; State* v. *Vigliano, supra.*

[6] *E. g., Smith* v. *State, supra; People* v. *Worley, supra; People* v. *Sayers, supra;* Comment, The Applicability of *Miranda* to Retrials, 116 U. Pa. L. Rev. 316, 320 (1967); Comment, Post-*Miranda* Retrials of Pre-*Miranda* Defendants, 25 Wash. & Lee L. Rev. 108, 109 (1968).

offenses. This anomaly could result if one of the defendants had been previously tried for the same offense prior to *Miranda*. This identical result, however, is also possible under our more recent prospectivity decisions. Because both *Desist* v. *United States,* 394 U. S. 244 (1969), and *Stovall* v. *Denno,* 388 U. S. 293 (1967), selected the date on which the prohibited practice was engaged in, rather than the date the trial commenced, to determine the applicability of newly formulated constitutional standards, those standards do not apply to retrials of defendants originally tried prior to the dates the standards were announced. In fact, under those decisions, different rules could govern where neither defendant had been tried before, depending upon when the condemned practice was engaged in.

Moreover, as petitioner acknowledges, *Johnson* made it quite clear that *Miranda* need not be applied to trials commenced prior to that decision but not yet final when it was announced. On that date, petitioner's case was in precisely that posture. The type of apparent incongruity petitioner urges us to avoid is equally present in refusing to apply *Miranda* to defendants whose cases, like petitioner's, were not final on the date *Miranda* was decided, yet making an exception for petitioner simply because he was afforded a post-*Miranda* retrial for reasons wholly unrelated to the admissibility of his incriminating statement. Nor is petitioner's hypothetical more disconcerting than applying the new standards for in-custody interrogation to Ernesto Miranda while denying them to other defendants whose cases, for wholly fortuitous reasons, simply reached this Court at a later date, although the defendants in those cases may have been both interrogated and tried after Ernesto Miranda.

In short, petitioner's concern for what he refers to as "visible imperfection[s] in a judicial process" merely

highlights the problem inherent in prospective decision-making, *i. e.,* some defendants benefit from the new rule while others do not, solely because of the fortuities that determine the progress of their cases from initial investigation and arrest to final judgment. The resulting incongruities must be balanced against the impetus the technique provides for the implementation of long overdue reforms, which otherwise could not be practicably effected. Thus, raising the specter of potential anomalies does not further the difficult decision of selecting the precise event that should determine the prospective application of a newly formulated constitutional principle.

Once the need is established for applying the principle prospectively, as the Supreme Court of New Jersey has pointed out, "there is a large measure of judicial discretion involved in deciding . . . the time from which the new principle is to be deemed controlling." *State* v. *Vigliano,* 50 N. J. 51, 65–66, 232 A. 2d 129, 137 (1967). In our more recent decisions in this area, we have regarded as determinative the moment at which the discarded standards were first relied upon. See, *e. g., Desist* v. *United States, supra; Stovall* v. *Denno, supra.* The point of reliance is critical, not because of any constitutional compulsion, but because it determines the impact that newly articulated constitutional principles will have upon convictions obtained pursuant to investigatory and prosecutorial practices not previously proscribed. See *Johnson* v. *New Jersey, supra,* at 733. See generally Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N. Y. U. L. Rev. 631 (1967).[7]

---

[7] Our initial approach to prospective decision-making has undergone some modification. Compare *Linkletter* v. *Walker,* 381 U. S. 618 (1965), with *Desist* v. *United States,* 394 U. S. 244 (1969). With *Johnson* we began placing increasing emphasis upon the point at which law enforcement officials relied upon practices not yet proscribed; and, more recently, we have selected the point of initial

In *Johnson,* after considering the need to avoid unreasonably disrupting the administration of our criminal laws, we selected the commencement of trial as determinative. We of course could have applied *Miranda* to all judgments not yet final, although they were obtained in good-faith reliance upon constitutional standards then applicable. See *Linkletter* v. *Walker,* 381 U. S. 618 (1965). As we pointed out, however, that choice "would [have] impose[d] an unjustifiable burden on the administration of justice." 384 U. S., at 733. On the other hand, we could have adopted the approach we took in *Stovall* and *Desist* and made the point of initial reliance, the moment the defendant is interrogated, the operative event. See Schaefer, *supra,* at 646. But in an effort to extend the protection of *Miranda* to as many defendants as was consistent with society's legitimate concern that convictions already validly obtained not be needlessly aborted, we selected the commencement of the trial. Implicit in this choice was the assumption that, with few exceptions, the commission and investigation of a crime would be sufficiently proximate to the commencement of the defendant's trial that no undue burden

reliance. See, *e. g., Desist* v. *United States, supra; Stovall* v. *Denno, supra.* In addition to being more consistent with the fundamental justification for not applying newly enunciated constitutional principles retroactively, this latest approach has obviated at least one administrative problem, the treatment of retrials. Our experience, therefore, has confirmed Mr. Justice Schaefer's observation: "Sound growth can be promoted and erratic results avoided by focusing attention on the element of reliance that justifies the technique. Even when that is done there will not always be agreement as to the quality or degree of reliance that justifies a particular prospective limitation. But the area of disaffection will be narrowed if time before and time after are measured from the moment of reliance." Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N. Y. U. L. Rev. 631, 646 (1967).

would be imposed upon prosecuting authorities by requiring them to find evidentiary substitutes for statements obtained in violation of the constitutional protections afforded by *Miranda.*

This same concern for the justifiable reliance of law enforcement officials upon pre-*Miranda* standards militates against applying *Miranda* to retrials, which would place a much heavier burden upon prosecutors to compensate for the inadmissibility of incriminating statements obtained and admitted into evidence pursuant to practices not previously proscribed. See, *e. g., State* v. *Vigliano, supra; People* v. *Sayers,* 22 N. Y. 2d 571, 240 N. E. 2d 540 (1968); Comment, The Applicability of *Miranda* to Retrials, 116 U. Pa. L. Rev. 316, 324–325 (1967). As we stated in *Stovall,* "[I]nquiry would be handicapped by the unavailability of witnesses and dim memories." 388 U. S., at 300. The burden would be particularly onerous where an investigation was closed years prior to a retrial because law enforcement officials relied in good faith upon a strongly incriminating statement, admissible at the first trial, to provide the cornerstone of the prosecution's case.[8] Moreover, we cannot assume that applying *Miranda* to retrials would affect only a small number of cases. It could, for example, render significantly more difficult the prosecutions of defendants, some of whom may have been convicted many years ago, who are afforded retrials because their convictions were obtained in violation of recently articu-

---

[8] In one recent case, for example, in which the court refused to apply *Miranda* to the defendant's retrial, it noted: "The investigation of this brutal assault and the interrogation of defendant began in January 1955—more than 12 years previous to this retrial. The evidence is clear that in 1955 defendant was warned of his constitutional rights in accordance with the requirements then prevailing." *State* v. *Lewis,* 1 N. C. App. 296, 297–298, 161 S. E. 2d 497, 499 (1968).

lated constitutional principles that are fully retroactive. See, *e. g., Berger* v. *California,* 393 U. S. 314 (1969); *Roberts* v. *Russell,* 392 U. S. 293 (1968). Such a decision could also pose a serious obstacle to the successful prosecution of an undetermined number of defendants whose pre-*Miranda* convictions are reversed because of errors under federal or state law that do not even constitute constitutional violations.[9]

In determining how much weight to give the increased evidentiary burden that would result if we were to insist that *Miranda* be applied to retrials, we must consider society's interest in the effective prosecution of criminals in light of the protection our pre-*Miranda* standards afford criminal defendants. As we pointed out in *Johnson,* an individual who cannot claim the benefits of *Miranda* may still resort to whatever state and federal procedures are available to insure that statements admitted against him were made voluntarily. Moreover, he may invoke a "substantive test of voluntariness which, because of the persistence of abusive practices, has become increasingly meticulous . . . , [taking] specific account of the failure to advise the accused of his privilege against self-incrimination or to allow him access to outside assistance." 384 U. S., at 730. As a result, not applying *Miranda* to retrials will not preclude the invocation of "the same safeguards as part of an involuntariness claim." *Ibid.* Thus, because of the increased evidentiary burden that would be placed unreasonably upon law enforcement officials by insisting that *Miranda* be applied to retrials, and for all the reasons we gave in *Johnson* for not applying *Miranda* retroactively, we hold

---

[9] See, *e. g., United States* v. *Phillips, supra* (discretion abused by admitting unduly "prejudicial" evidence); *State* v. *Ruiz, supra* ("plain error" in trial court's fact finding); *Boone* v. *State, supra* (insufficient corroboration of accomplice's testimony).

that *Miranda* does not apply to any retrial[10] of a defendant whose first trial commenced prior to June 13, 1966.

Accordingly, the judgment of the Supreme Court of Delaware is                                                *Affirmed.*

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS joins, dissents for the reasons stated in his dissenting opinions in *Linkletter* v. *Walker*, 381 U. S. 618, 640, and *Johnson* v. *New Jersey*, 384 U. S. 719, 736.

MR. JUSTICE HARLAN, dissenting.

As one who has never agreed with the *Miranda* case but nonetheless felt bound by it,* I now find myself in the uncomfortable position of having to dissent from a holding which actually serves to curtail the impact of that decision.

I feel compelled to dissent because I consider that the new "retroactivity" ruling which the Court makes today is indefensible. Were I free to do so, I would hold that this petitioner is entitled to the benefits of *Miranda,* this case being before us on direct review and being one which had not become final prior to the decision of *Miranda.* See my dissenting opinion in

---

[10] For purposes of this holding, it is immaterial whether state law treats a retrial as the continuation of the original trial, see, *e. g., People* v. *Worley, supra,* or as a completely new trial that proceeds as if the former trial never occurred. See, *e. g., State* v. *Brock, supra.* What is determinative is that the defendant is being tried for the same conduct that was the subject of a previously reversed conviction. A State is free, of course, for any reason it finds persuasive, to apply *Miranda* to a subsequent trial of a defendant whose original trial commenced prior to that decision. See *Johnson* v. *New Jersey, supra,* at 733.

*See my dissenting opinion in *Miranda* v. *Arizona,* 384 U. S. 436, 504 (1966), and my concurring opinion in *Orozco* v. *Texas,* 394 U. S. 324, 327 (1969).

*Desist* v. *United States,* 394 U. S. 244, 256 (1969); *Link-letter* v. *Walker,* 381 U. S. 618 (1965). But since as to the retroactivity issue I am also bound by *Johnson* v. *New Jersey,* 384 U. S. 719 (1966), I must judge that issue within the confines of *Johnson,* which does not appear to have been overruled by what was done in *Desist* v. *United States, supra.*

In the *Johnson* case we held that the "guidelines" of *Miranda* should apply to all "persons whose trials had not begun as of June 13, 1966," 384 U. S., at 734, the date on which *Miranda* was handed down. Today, however, the Court holds that *Miranda* does not apply to persons whose *retrials* have commenced after that date, if the original trial had begun before *Miranda* was decided. I find it quite impossible to discern in the rationale of *Johnson* any solid basis for the distinction now drawn.

The Court states that the retroactivity rule adopted in *Johnson* was "an effort to extend the protection of *Miranda* to as many defendants as was consistent with society's legitimate concern that convictions already validly obtained not be needlessly aborted." *Ante,* at 219. I too believe that a desire not to interfere with trials which were concluded or already under way at the time of *Miranda* lay at the core of what was done in *Johnson.* See 384 U. S., at 732–735. But that rationale would seem to require application of *Miranda* to subsequent retrials, rather than the contrary result mandated by the Court. When a defendant has had his pre-*Miranda* conviction set aside on other than *Miranda* grounds and is being retried, there is by hypothesis no "conviction . . . validly obtained" which might be "needlessly aborted" by application of the *Miranda* standards. There is no ongoing trial in which the prosecution's strategy might have been premised on pre-*Miranda* confession rules.

I am also left wholly unpersuaded by the Court's statement that application of *Miranda* to retrials would impose an intolerable "evidentiary burden" on prosecutors, for the Court ignores the fact that *Miranda* will impose a very similar burden whenever a defendant's *first* trial has for one reason or another been substantially delayed and its commencement carried beyond the *Johnson* cut-off date.

Apart from the two propositions just discussed, the Court offers nothing in justification of its trial-retrial distinction beyond the general observation that the retroactivity "technique" necessarily entails "incongruities" which must be tolerated because of "the impetus the technique provides for the implementation of long overdue reforms, which otherwise could not be practicably effected." *Ante,* at 218. But surely it is incumbent upon this Court to endeavor to keep such incongruities to a minimum. This in my opinion can only be done by turning our backs on the *ad hoc* approach that has so far characterized our decisions in the retroactivity field and proceeding to administer the doctrine on principle. See my dissenting opinion in *Desist, supra.* What is done today leads me again, see *ibid.,* to urge that the time has come for us to take a fresh look at the whole problem of retroactivity.

I would reverse the judgment of the Supreme Court of Delaware. It would be less than frank were I not to say that I cast this vote with reluctance, feeling as I do about the unsoundness of *Miranda.*