## STATE OF TENNESSEE ex rel. ISAIAH PINKARD, Plaintiff in Error, v. C. MURRAY HENDERSON, Warden, Tennessee State Penitentiary, Defendant in Error.

### 452 S.W.2d 908.

Court of Criminal Appeals of Tennessee. Oct. 28, 1969.

Certiorari Denied by Supreme Court March 2, 1970.

Robert C. Sanders, Columbia, for plaintiff in error.

George F. McCanless, Atty. Gen., Thomas E. Fox, Deputy Atty. Gen., Nashville, William M. Leech, Jr., Asst. Dist. Atty. Gen., Columbia, for defendant in error.

## OPINION

OLIVER, Judge.

Isaiah Pinkard, the plaintiff in error and petitioner below, an inmate of the penitentiary where he is serving a 99-year sentence for unlawful carnal knowledge of a female under 12 years of age, appeals to this Court from the judgment of the Circuit Court of Maury County dismissing, without an evidentiary hearing, his petition filed under the Post-Conviction Procedure Act of this State (T.C.A. §§ 40-3801—40-3824).

The only question presented in the petition and here is whether imposition of a more severe sentence upon reconviction in a second trial than he received in his original trial violated the petitioner's constitutional rights.

■ ■ In the petitioner's original trial in April of 1948, he was sentenced to imprisonment for 20 years in the penitentiary. Later in the same month the trial court sustained and granted his motion for a new trial. Upon his retrial in July of 1948, he was again convicted by a jury and sentenced to 99 years in the State Penitentiary. His contention that the increased punishment imposed in his retrial violated the due process and equal protection clauses of the Fourteenth Amendment is untenable. It is unquestionable that a defendant who procures a judgment against him to be set aside may be tried anew upon the same indictment, or upon another indictment, for

the same offense. Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300; United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 449. In our opinion reason is on the side of the rule that when a convicted defendant seeks and obtains reversal of his conviction and a new trial, he must take the burden with the benefit. Miller v. United States, 224 F.2d 561 (5th Cir. 1955). Such is the settled law in this State.

In Murphy v. State, 221 Tenn. 351, 426 S.W.2d 509, rejecting the same contention made in the present case, the Court said:

"The defendant further argues in this assignment that it is a violation of due process under the 14th Amendment of the Federal Constitution to impose a harsher penalty on retrial than at the original trial. Here, the defendant received a sentence of 20 years at his original trial and 50 years upon retrial. This Court considered a similar contention involving double jeopardy in State ex rel. Austin v. Johnson (1966) [218 Tenn. 433,] 404 S.W.2d 244, where this Court said:

'(W)hen the accused, himself, procures a judgment to be set aside upon his own initiative and he voluntarily accepts the result, then he cannot by his own act avoid the jeopardy in which he stands and then assert it as a bar to a subsequent jeopardy.'

"Similarly, if the defendant seeks a new trial, he must be prepared to face a new court and a new jury without limitations being placed on their decision.

"If defendant's contention was taken as correct, he could technically escape further prosecution. His initial conviction was reversed and a new trial granted

because the jury's verdict of 20 years was less than the minimum statutory sentence of 'some period over 20 years.' If defendant's argument were accepted, the jury would be precluded from awarding a sentence of more than 20 years. Since they could not fix one for 20 years or less, no sentence would be permissible."

In North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court, considering the same question, said:

"Long-established constitutional doctrine makes clear that, beyond the requirement already discussed the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction. At least since 1896, when United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300, was decided, it has been settled that this constitutional guarantee imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside. 'The principle that this provision does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence.' United States v. Tateo, 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448. And at least since 1919, when Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103, was decided, it has been settled that a corollary of the power to retry a defendant is the power, upon the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction. * * *

"* * * In the first place, we deal here, not with increases in existing sentences, but with the imposition of wholly new sentences after wholly new trials. Putting that conceptual nicety to one side, however, the problem before us simply cannot be rationally dealt with in terms of 'classifications.' A man who is retried after his first conviction has been set aside may be acquitted. If convicted, he may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentenc than the one originally imposed. The result may depend upon a particular combination of infinite variables peculiar to each individual trial. It simply cannot be said that a State has invidiously 'classified' those who successfully seek new trials, any more than that the State has invidiously 'classified' those prisoners whose convictions are *not* set aside by denying the members of that group the opportunity to be acquitted. To fit the problem of this case into an equal protection framework is a task too Proscrustean to be rationally accomplished.

"We hold, therefore, that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction."

■ With respect to the petitioner's insistence that the imposition of the greater sentence in his retrial was to punish him for seeking and obtaining a new trial, it is only necessary to point out that in both trials the jury, and not the judge as in *Pearce,* supra, assessed the punishment; and that there is no averment or insistence by the petitioner that the retrial jury had any knowledge of or was in any way influenced by his having been granted

a new trial at his behest after his original conviction. Indeed, it is practically inconceivable that the second jury had such knowledge or was so motivated.

The judgment of the trial court is affirmed.

This case was heard and submitted to the Court prior to enactment of Chapter 330 of the Public Acts of 1969 increasing the membership of the Court.

WALKER, P. J., concurs.

GALBREATH, Judge (dissenting).

I must respectfully dissent.

The majority opinion cites the controlling case on the question of whether increased punishment on a subsequent trial may be constitutionally inflicted, but has apparently misconstrued, as I see it, the plain holding of the United States Supreme Court in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (June, 1969).

Instead of approving the imposition of a more severe punishment following a successful attack on the first conviction *Pearce* declares that unless there affirmatively appears in the record a reason and justification for the increased penalty, it must be considered unconstitutional.

Following the language cited by the majority from *Pearce,* which merely reiterates the accepted principle that increased punishment does not in and of itself amount to double jeopardy, Justice Potter Stewart, speaking for a remarkably united court (only two dissents in part) then goes on to explain how such an imposition of a greatly enhanced penalty without ex-

planation as encountered here is unconstitutional. Not because of the proscription against double jeopardy but because placing such an intolerable burden or risk upon a person seeking to overturn an unjust conviction robs him of due process:

> "It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, 'penalizing those who choose to exercise' constitutional rights, 'would be patently unconstitutional.' United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138. And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to 'chill the exercise of basic constitutional rights.' Id., at 582, 88 S.Ct., at 1216. See also Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; cf. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. But even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law. 'A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant.'

Nichols v. United States, 106 F. 672, 679. A court is 'without right to * * * put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. * * * [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice.' Worcester v. Commissioner of Internal Revenue, 1 Cir., 370 F.2d 713, 718. See Short v. United States, 120 U.S.App.D.C. 165, 344 F.2d 550, 552. 'This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899.' Rinaldi v. Yeager, 384 U.S. 305, 310-311, 86 S.Ct. 1497, 1500-1501, 16 L.Ed.2d 577.

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation,

we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." North Carolina v. Pearce, *supra*.

No reason appears in this case for imposition of a harsher penalty and the only reason suggested in the briefs before this Court is that of the petitioner that he was being punished for exercising his right to a new trial.

It is abundantly clear to me that the part of the sentence imposed in this case over and beyond the twenty years first fixed is void. It matters not that the sentence was fixed by a jury rather than the judge. The judge had to approve the sentence and pronounce judgment on it. A jury should not be allowed to violate the constitution any more than a court. In this, I must further disagree with my brethren who in the majority opinion said "it is practically inconceivable that the second jury had such knowledge" (of the original conviction for raping a child). To me, it is completely, not practically, inconceivable that in rural Maury County a jury impaneled some two weeks after the first trial and a few days after the setting aside of its result (the first trial was April 6, 1948; the second April 24, 1948) did not know of the prior proceeding! That there might exist a

strong resentment on the part of members of the second jury that the defendant was trifling with justice and should be severely punished for his audacity in trying to escape his just deserts is too strong a probability to dismiss lightly. If the United States Supreme Court does not believe it proper for a judge to double or triple a man's punishment without some affirmative showing that facts not known during the first trial justify such increase, I cannot agree that such awesome power of vindictiveness should be entrusted to laymen.

The prisoner has paid the debt imposed constitutionally and should be released.