UNITED STATES, Appellant,

v.

Albert L. NICKS, a/k/a Albert L. Tales, Appellee.

Nos. 79–655, 79–697.

District of Columbia Court of Appeals.

Argued Dec. 5, 1979.

Decided March 3, 1981.

J. Ramsey Johnson, Asst. U. S. Atty., Washington, D.C., with whom Carl S. Rauh, U. S. Atty., Washington, D.C., at the time the brief was filed, John A. Terry, Michael W. Farrell, and Richard C. Otto, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellant.

William J. Mertens, Public Defender Service, Washington, D.C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D.C., was on the brief, for appellee.

Before KERN and MACK, Associate Judges, and GALLAGHER, Associate Judge, Retired.[*]

GALLAGHER, Associate Judge:

In these consolidated appeals, the government challenges the trial court's decision to suppress evidence pursuant to *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), a Supreme Court decision rendered after the defendant's arrest and before trial. It also argues that the trial court erred in dismissing the indictment pending an interlocutory appeal on the suppression ruling. D.C. Code 1973, § 23-104(a)(1). Appellee responds that this court is without jurisdiction to hear the suppression issue because the government filed its notice of appeal prior to entry of a final order. Finding jurisdiction, we affirm the trial court's suppression ruling. The dismissal of the indictment, if considered erroneous, would be harmless.

Appellee was indicted for unauthorized use of an automobile and receiving stolen property. D.C. Code 1973, §§ 22-2204, -2205. On September 13, 1978, the police stopped the car he was driving which had license plates indicating it was a rental vehicle. They requested to see his driving permit and the rental contract. A check with the rental company revealed the car had been rented on a stolen credit card. Appellee was arrested and the rental contract seized.

At a May 21, 1979 hearing on appellee's suppression motion, the government proffered that the arresting officer would testify he stopped appellee's vehicle because it bore rental tags. During the month preceding the arrest, he had averaged about one arrest per week as a result of stopping rental cars. The return date on the rental contract surrendered by appellee appeared to have been altered, which led the officer to contact the rental company.

The government did not seriously contend that this stop was supported by a reasonable suspicion that the car was linked with unlawful activity; nor did it suggest that the stop was part of a systematic traffic enforcement effort. The encounter was, without question, nothing more than a random spot check.

Between the time appellee's suppression motion was filed, March 13, 1979, and the hearing on the motion, May 21, 1979, the Supreme Court issued its decision in *Delaware v. Prouse, supra*. That case declared random traffic stops unsupported by probable cause or a reasonable suspicion of unlawful activity to be in violation of the mandates of the Fourth Amendment. The primary issue at the suppression hearing thus became whether *Prouse* ought to apply to a random traffic stop conducted prior to the date of the decision.

The government argued that *Prouse* should not apply retroactively because it was a sharp break with the law in this jurisdiction, overruling *Palmore v. United States*, D.C.App., 290 A.2d 573 (1972), aff'd on jurisdictional grounds only, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). Under *Palmore*, the stop of appellee was valid. The trial court disagreed, stating that this is not a case posing a retroactive-prospective issue and holding that *Prouse* applied. As a subsidiary consideration, it pointed to

---

[*] Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

a more recent case of the United States Court of Appeals for the District of Columbia Circuit, *United States v. Montgomery*, 182 U.S.App.D.C. 426, 561 F.2d 875 (1977) under which the stop here would have been impermissible. In addressing the retroactivity question the government conceded that *Montgomery* foreshadowed *Prouse*, but argued that since it was not controlling authority for the local court system, the police could reasonably rely on *Palmore* until it was directly overruled. The court declined to accept this argument.[1]

The government requested permission to file a written motion for reconsideration. Accordingly, the judge stated from the bench that the rulings would not be final until he entered a formal written order, and the time for appeal would not begin to run until then. On May 25, the government filed its motion for reconsideration, which was argued May 29. The court remained unpersuaded. When the government announced that without the suppressed evidence it had no case and that it intended to appeal, the court dismissed the indictment. The judge stated his intention to issue a formal order. On June 8, the government filed its notice of appeal of the suppression disposition. On June 11, the trial court entered its promised formal order, rendering final both the suppression decision and the dismissal of the indictment. On June 21, the government noted a second appeal from the dismissal. The two appeals are consolidated.

## I.

We turn first to the question of appellate jurisdiction. In the May 21 hearing, the trial judge specifically stated his intention that the ruling would not be final for purposes of appeal until a formal written order was issued. Since the court did not enter

that order until June 11, appellee argues that the government's June 8 notice of appeal on the suppression ruling was premature. Its later June 21 filing appealed only the dismissal. Therefore, asserts appellee, we are without jurisdiction to hear the suppression matter.

D.C.App. R. 4 II(b)(1) requires that notice of an appeal in a criminal case be filed within ten days after entry of the judgment or order appealed from. Subsection (4) further specifies that a "judgment or order is deemed to be entered ... when it is entered in the criminal docket by the Clerk." Our cases have created an exception to the operation of subsection (4) where the trial judge clearly expresses an intention that a written order condition the time for filing an appeal. *United States v. Engram*, D.C. App., 337 A.2d 488, *cert. denied*, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648 (1975).

Here, however, even if the trial court's May 21st ruling could be read as indicating that a written order would condition the time for appeal,[2] subsequent events made its intent so ambiguous on this score as to preclude our penalizing the government by refusing jurisdiction. The trial court stated in its May 21 ruling:

I am going ... to grant the motion [to suppress] at this time.

I will entertain a motion to reconsider, and in order to protect the Government's rights, I will hold that, my dismissal will not be effective until the Court enters a formal order.

Now under the applicable authority from the D.C. Court of Appeals, if the Court expresses its intent that the ruling made from the bench will not be effective until it's incorporated in a written order and the time for appeal does not run until the order is entered, if the Court doesn't express that, then the time for appeal

---

1. The court ruled alternatively, that *United States v. Montgomery, supra* controlled, since it was a determination of federal constitutional law by a federal circuit court. It revised this ruling in the May 29 hearing, citing *Montgomery* as authority for its conclusion that the law had changed and the police could no longer rely on *Palmore*.

2. A different issue is presented where the party, rather than judge, expressed a desire for a written order and in fact prepared and submitted it. *See United States v. Fraser*, D.C. App., 330 A.2d 761 (1975).

runs at the time of the final ruling from the bench.

The docket entry for his hearing reads: "Argument heard on the Defense motion to suppress. Motion granted by the court. Continued to May 29, 1979 for status hearing.... Order stayed pending an appeal."

Since the judge implicitly referred to *United States v. Engram, supra,* in his oral ruling, by authority of that case the May 21 proceedings were not final for purposes of appeal.

However, at the subsequent hearing on May 29 (on the government's motion for reconsideration) the trial court was much less precise in expressing its intent as to when the ruling was to be final. After reaffirming its original suppression decision, the court noted:

> Accordingly, the Court will finalize its ruling granting the motion to suppress and ... the Government wasn't able to proceed without the evidence having to do with the rental agreement.

> \* \* \* \* \* \*

> Therefore, the Court will dismiss the case. The Court will issue an order.

> \* \* \* \* · \* \*

> Now ... I suppose we ought to set this matter for a status hearing 30 or probably 60 days distant. The Government in the meantime can pursue its appeal.

The docket entry for this proceeding supports the conclusion that the judge viewed the bench ruling as final for purposes of the government's appeal.

> Government motion for reconsideration of the court's ruling denied. The court finalizes its ruling and grants the motion to suppress. The Government announces that it is unable to proceed to trial without the evidence that is suppressed. Case dismissed by the Court. Status hearing in the matter is scheduled by the Court for July 25, 1979 to allow the Government to appeal the court's ruling at which time the dismissal will be finalized.

The court's oral statements, coupled with this docket entry, could readily lead the government to conclude that the entry of the final order, for purposes of the right to appeal, occurred May 29. It filed a notice to appeal ten days later, timely if May 29 is the triggering date. Had the record consisted of nothing more, the government's notice of appeal would have been timely. The complicating factor here is that the trial court formalized its oral ruling in a written order entered June 11. Not only did the court confirm its suppression ruling, it also dismissed the case, and for the first time did not note a stay pending the government appeal. Accordingly, the government lodged a second notice of appeal, this time from the dismissal, within ten days on June 21.

█ In light of the imprecisely stated intention to indicate otherwise, and the docket entry, the May 29 bench ruling was final for purposes of our jurisdiction.[3] The entry of notice to appeal grant of the suppression motion on June 8 was not premature. For similar reasons, the appeal of the dismissal on June 21 was not late, given the fact that the judge did not hint that there would be no stay until his June 11 written order.

## II.

The parties have argued at length the applicability of the doctrines of law relating to retroactivity of recent controlling decisions. More particularly, they argue pro and con on whether *Delaware v. Prouse, supra,* which concededly outlaws the stop in this case, should be given controlling effect. The government argues that to do so would be contrary to governing decisions on whether an opinion may be given retroactive effect. Appellee, on the other hand, joins issue with the government on the several prongs of its position.

---

**3.** Because we view the May 29 ruling as final, we need not address whether a notice of appeal filed *before* entry of a final order, but after the docket entry of the ruling, precludes our juris-

diction. *Cf. West v. United States,* D.C.App., 346 A.2d 504 (1975) (appeal taken by defendant before sentence announced is premature and appellate jurisdiction does not exist).

We agree with the trial court, however, that all this is beside the point as the fact of the matter is we are not presented with "a true case of retroactivity." The Supreme Court decided *Delaware v. Prouse, supra,* after the arrest in this case but prior to the suppression hearing. It is conceded on all sides that, if applied, *Prouse* invalidates the stop in this case.

This is not a case where a controlling decision is handed down after a conviction but before an appeal therefrom is heard, nor is it a case where a collateral attack if applied, would warrant relief, *e. g., United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); *Jenkins v. Delaware,* 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Fuller v. Alaska,* 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Instead, this is a case where the trial court at a pretrial hearing on a motion to suppress evidence is told by the government that it should not apply a recent controlling Supreme Court decision on the issue presented by the motion to suppress as, contrary to controlling decisions, it would be giving retroactive effect to the Supreme Court's pronouncement.

The retroactive versus prospective effect issue usually arises only in the context where a recent controlling decision is handed down subsequent to a conviction. This is the unusual case where a question initially rises in the context of an already decided controlling decision. It is immaterial to

argue that, this being an exclusionary rule case, the evidence should be suppressed only if it would serve to deter future police conduct.

■ The crucial consideration here is that at the time the court was considering the pretrial motion to suppress, *Prouse* had already held that the stop in this case is illegal. Under these circumstances, when faced with ruling on a pending motion the trial court should not ignore the law of the land. It is not paramount in these particular circumstances that the arresting officer had no reason to believe his action in stopping the vehicle was illegal.[4] The prevailing consideration is that at the time the question came before the court in the first instance and at the time of trial the decision in *Prouse* made the stop invalid. This being so, the line of decisions on retroactive versus prospective application of a court decision—almost all of which relate to decisions which arise after judgment has been entered in the trial court—becomes immaterial.

The question before the court at the suppression hearing was simply this—should the trial judge admit concededly illegally seized evidence. The trial court here decided correctly that it should not. This being so, no other question remains.

*Affirmed.*

MACK, Associate Judge, concurring in Part I and the result:

I am intrigued by, and attracted to, my Brother Gallagher's no-nonsense way of disposing of the question of retroactive application of the *Delaware v. Prouse,* (440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed. 660 (1979))

---

4. There is clearly no question of retroactivity presented on this record. There were contentions made that the *Prouse* decision was forecast by the Supreme Court opinions; and that the United States Circuit Court in this jurisdiction in *United States v. Montgomery, supra,* conflicted with our then controlling opinion in *Palmore v. United States, supra.* Consequently, says appellee, with all those decisional indications casting serious doubt on the validity of our decision in *Palmore v. United States, supra,* the court now has no real choice but to reach

out and construe *Prouse* as applying retroactively, though this issue is not properly before us. If there were any doubt that this contention lacked merit, it was removed by the Supreme Court's recent opinion in *Brown v. Louisiana,* 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed. 159 (1980). There the Supreme Court held that only decisions which cast doubt upon the reliability of the determinations of guilt in past criminal cases may require retroactive application. There is no such consideration here.

principle. Conceptually, however, I have difficulty in thinking of the issue as being otherwise than that of the legality of the officer's conduct at the time it occurred. Because of this fact, and the government's position that the officer was acting at that time in good-faith reliance with the law, I think we are compelled to meet the issue of retroactivity. As in *Brown v. Louisiana*, 447 U.S. 323, 334, 100 S.Ct. 2214, 2223, 65 L.Ed. 159 (1980), I would hold that the element of justifiable reliance on prior law * was minimal because the *Prouse* rule was distinctly foreshadowed by decisions of the Supreme Court, the United States Circuit Court in this jurisdiction, and our court. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). *See also Punch v. United States*, D.C.App., 377 A.2d 1353, 1356 (1977), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *United States v. Montgomery*, 182 U.S.App.D.C. 426, 561 F.2d 875 (1977). I concur in affirmance.

---

* *See Palmore v. United States*, D.C.App., 290 A.2d 573 (1972), *aff'd on jurisdictional grounds* *only*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).