THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
MIGUEL QUIÑONES RAMOS, Defendant and Appellant.

No. CR-68-247.        Decided April 13, 1970.

2

*Cancio & Cancio* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On January 16, 1967 we rendered judgment in appeal No. C-65-138, *The People of Puerto Rico* v. *Superior Court, etc.,* affirming an order which had granted a new trial to appellant, Miguel Quiñones Ramos.[1] The trial having been held, the jury found him guilty of a violation of § 8 of the Weapons Law, 25 L.P.R.A. § 418, and, on the same evidence, the presiding judge found him guilty of violation of § 6 of said Act, 25 L.P.R.A. § 416. He was sentenced to serve, concurrently, from 3 to 5 years in the penitentiary, and one year in jail. He appealed.

1. In *People* v. *Ribas,* 83 P.R.R. 371, 376 (1961), we adopted the policy which allows a party against whom a

---

[1] The majority of the Court relied on the fact that the jury had been erroneously charged about the aspect of incidental possession of a weapon, Rule 188(d)(5) of the Rules of Criminal Procedure. Three other judges concurred and alleged that, in addition, the petition partook of the nature of a coram nobis, Rules 188(f) and 192.

witness testifies in a criminal prosecution to obtain copy of the statements given by said witness which are related to the events and activities of the case as to which the witness has testified at the trial, without the necessity of having previously established during the cross-examination the necessary grounds for the impeachment of his testimony. We specifically conditioned this right of defendant to the fact that the petition be presented "after [the witness] having testified and when he is called for cross-examination." Several months later, in *People* v. *Ramos*, 84 P.R.R. 542, 548 (1962), while considering the situation of witnesses for the prosecution who were not used by the prosecuting attorney and who were placed at the disposal of the defense, we refused to extend the policy of *Ribas* as to the delivery of the sworn statements in the hands of the prosecuting attorney on the ground that the doctrine invoked was based on the fact "that defendant should have every opportunity to challenge the veracity of the witnesses who testify against him," and, therefore, it is not until the witness has testified that the right to obtain the statement arises. And in *People* v. *Díaz*, 86 P.R.R. 529, 532 (1962), we held that when a witness waived by the prosecuting attorney is introduced by the defense and testifies, the defendant is entitled to receive copy of the statements given, referring again to the opportunity to impeach his testimony. But we also mentioned that the purpose of the criminal prosecution "is to ascertain the truth to further fair administration of justice." However, we limited the discovery by providing that at the request of the prosecuting attorney, the presiding judge should examine the statement in order to ascertain whether it contains information which should be kept confidential for the purposes of an effective prosecution, and if he so determines, he shall direct that the statement be transcribed, eliminating the confidential material and then deliver it to the defense. *People* v. *Ramos, supra,* was strictly followed in *People* v. *Cotto Torres*, 88 P.R.R. 22, 37 (1963)

and *People* v. *Martell Cajigas,* 88 P.R.R. 617, 629 (1963).

We have agreed to re-examine the doctrine established in *People* v. *Ramos, supra,* in order to adopt that procedural rule which better guarantees a just and impartial trial, without granting undue advantages to any of the parties and without prejudicing a true and complete introduction of the facts for the adjudication by the trier.[2]

The situation which we are considering presupposes that, at the close of the introduction of evidence by the prosecuting attorney, certain witnesses whose names appear on the back of the information are waived, since it is evidence of a cumulative nature to that already *introduced,* and they are placed at the disposal of the defense to utilize them or not, in accordance to defendant's convenience, therefore avoiding that there might arise the presumption that if they had testified, their testimony would have been adverse to the People, subd. 5 of § 102 of the Law of Evidence, 32 L.P.R.A. § 1887. See *People* v. *Hernández Pérez,* 93 P.R.R. 180, 188–189 (1966); *People* v. *Flores Berty,* 92 P.R.R. 562 (1965); *People* v. *Pinto Medina,* 90 P.R.R. 570, 576 (1964); *People* v. *Orona Merced,* 89 P.R.R. 329, 337 (1963); *People* v. *Cotto Torres,* 88 P.R.R. 22, 31 (1963); *People* v. *Torres,* 86 P.R.R. 239 (1962). Although we might incur tautology, it is necessary to emphasize that the cumulative testimonies refer to those who seek to establish elements of evidence which have already been introduced by the witnesses who testified. In connection with these witnesses who had previously testified, according to *Ribas,* the defense had the opportunity of obtaining their sworn statements as soon as the direct examination was terminated, and no more. But the fact that they have not occupied the witness stand should not be given

---

[2] Since his concurrence in *People* v. *Díaz, supra* at p. 533 and in *People* v. *Cotto Torres, supra* at p. 37, Mr. Justice Santana Becerra had expressed himself in a favorable sense to the delivery of the sworn statements of witnesses waived by the prosecuting attorney.

a disproportionate importance. The purpose of placing the cumulative evidence at the disposal of the defense is to give them the opportunity of determining, by their examination, whether, if their testimony is offered orally, facts may be alleged which benefit defendant's position. This purpose may not be fully complied with in refusing access to their previous sworn statements. In what other manner could the fidelity of the memory which the witness has of the facts be proven? Or that facts are intentionally concealed in the interview so that in testifying about the same defendant is placed in an extremely precarious position by the devastating effect which an adverse testimony introduced by defendant himself may produce? Unless it is sought that defendant take the undue risk of weakening his defense by an impeachment of the testimony of the waived witness whom he decides to use to contradict expressions contained in the statements. That would not be a healthy rule when defendant's right to an adequate defense is considered. On the other hand, no prejudice may be caused to the prosecuting attorney since, if he had used the witnesses, he would have had to deliver the statements at the close of their testimonies, and also, already at this stage of the proceedings the necessity of protecting the secretive nature of the preliminary investigation of the prosecuting attorney has disappeared. The exercise by the prosecuting attorney of good judgment in the inclusion of witnesses on the back of the information and in the waiver of their testimonies, for being of a cumulative nature, is all that is required.

In the exercise of our inherent power to supervise the judicial proceedings, cf. *People* v. *Soto Zaragoza*, 94 P.R.R. 332, 335 (1967), we adopt as a rule to govern the proceedings held as of May 1, 1970, that the defense be permitted to inspect the sworn statements in the possession of the prosecuting attorney of those witnesses for the prosecution that are waived because they constitute evidence of a

cumulative nature. *People* v. *Ramos*, 84 P.R.R. 542 (1962), *People* v. *Díaz*, 86 P.R.R. 529 (1962), and *People* v. *Cotto Torres*, 88 P.R.R. 22 (1963), are expressly overruled insofar as this particular is concerned.[3]

■ Going on to the facts of the case at bar, an examination thereof reveals that the refusal to deliver the statement of the witness, Martín Ferrer Román, waived by the prosecuting attorney, did not cause appellant a substantial prejudice which warrants the reversal of the judgment. According to the evidence, witness Ferrer arrived at Salustiano Tirado's establishment *after appellant had drawn out a firearm and aimed at the former*, for a period of more than 15 minutes, as affirmed by Tirado, and Doris Sanabria who at the time was in the *cafetín*. When Ferrer arrived, Quiñones Ramos told him that he was going to kill Tirado, the former answering that "you do not kill anybody" (Tr. Ev. 89); Ferrer told Quiñones to kill him, "that what he was doing was abusing an elderly person" (Tr. Ev. 96); and then appellant put the revolver in his pocket and went to the back part of the store. As it may be seen, the offense had already been committed when Ferrer arrived at the scene of the crime, and any testimony which he may have rendered would not have the effect of detracting what had occurred before his arrival as told by the witnesses mentioned.

■ 2. The offering by the defense of a sworn extrajudicial statement of the deceased witness, Adela Rosa Cajigas, which had been used to substantiate the petition for a new trial, was not admitted. They pretended to justify its admissibility as a statement against the witness' penal interest, relying on the ground that it could have placed her in jeopardy of a proceeding for perjury. It suffices to say that it was not conclusively established that the witness had given

---

[3] Since an aspect of the due process of law is not involved, any consideration concerning our power to give prospective effect to the procedural rule which we adopt now is vain.

another contradictory statement to the prosecuting attorney in the investigation of the case, and that the typical situation where another person admits responsibility for the facts charged against defendant is not involved.[4] Besides, the state of our legislation, § 35(4) of the Law of Evidence, 32 L.P.R.A. § 1678(4)—limits the admission of declarations against interest "in respect to [the] *property*"—[5] and the case law, *People* v. *Santana,* 76 P.R.R. 635, 640 (1954); *People* v. *Márquez,* 67 P.R.R. 303, 306 (1947); *People* v. *Camacho,* 66 P.R.R. 810, 813 (1947); *People* v. *Marchand,* 53 P.R.R. 640, 646 (1938); prohibited the consent to the defense's petition.[6]

■ 3. The inference from the incidents recited in the third error, which might have been drawn as to the result of the former trial, did not justify the discharge of the jury. *Piñero Agosto* v. *Superior Court,* 94 P.R.R. 193 (1967). The judge's timely intervention and the adequate instructions on that particular avoided any prejudice which may have been conceivably caused to appellant, especially if it is considered that the defense had mentioned the former trial on several occasions—from the very moment of the selection of the jury —and that no express reference was made to the judgment rendered.

---

[4] All that is stated in the sworn statement offered is that "in the investigation of this case I testified before the prosecuting attorney, forced by my concubine, but when I found out that Miguel had been found guilty of carrying weapons, I was aggrieved by this injustice. . . ."

[5] See Rule 512 of the Rules of Evidence, proposed since 1958.

[6] This rule of exclusion of declarations against the penal interest of the deponent has been strongly criticized. See McCormick, Law of Evidence, § 255; 2 Jones, Law of Evidence, § 296; 5 Wigmore, Evidence, § 1476; Morgan, *Declarations Against Interest,* 5 Vand. L. Rev. 451 (1952); Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule,* 58 Harv. L. Rev. 1 (1944); Morgan, *Declarations Against Interest in Texas,* 10 Texas L. Rev. 399 (1932); Notes in 62 Nw. U.L. Rev. 934 (1967); 18 Syracuse L. Rev. 61 (1966), 12 De Paul L. Rev. 323 (1963), 16 Wash. & Lee L. Rev. 126 (1959), and 61 W. Va. L. Rev. 149 (1959). See, also, 162 A.L.R. 446.

■ 4. The evidence for the prosecution is sufficient to support the conviction, especially the testimony of witnesses Salustiano Tirado and policeman Manuel Chico, to whom appellant voluntarily delivered the weapon. Actually, appellant does not make any effort to point out the insufficiency of the evidence nor the alleged contradictions. The assignment is frivolous.

5. We agree that under the circumstances of the case the minimum term of three years is excessive and that the same should be reduced in order to propitiate the ends of the Indeterminate Sentence Act.

The judgment rendered by the Superior Court, Aguadilla Part, on June 29, 1967, in case G-63-99, will be modified to reduce the minimum term to one year, and as thus modified, the judgments rendered on said date will be affirmed.

Mr. Justice Santana Becerra dissented in part. Mr. Chief Justice Negrón Fernández and Mr. Justice Hernández Matos did not participate herein.

—O—

MR. JUSTICE SANTANA BECERRA, dissenting in part.

San Juan, Puerto Rico, April 13, 1970

I maintained in *People* v. *Díaz*, 86 P.R.R. 529 (1962), unlike the majority opinion, that a defendant was entitled to be furnished with copy of the sworn statements rendered by witnesses for the prosecution—whom the prosecuting attorney would not call afterwards to testify and placed them at the disposal of the defense—before the defense would determine whether to use them or not.

In that case there was the following statement on my part in the judgment: (86 P.R.R. at 533)

"Mr. Justice Santana Becerra is of the opinion that the delivery of the sworn statements of the preliminary investigation of the prosecuting attorney, of the witnesses waived by the

latter during the trial, was proper, not only at the state of the prosecution in which this Court recognizes in its opinion, after having been used as defendant's witnesses, but also at the prior state of the proceeding in which there was requested for the first time, before the witnesses testified at the trial, *as a necessary element for an adequate defense of just trial.*" (Italics ours.)

Subsequently, in *People* v. *Cotto Torres,* 88 P.R.R. 22 (1963), I again expressed myself in the same sense in the judgment: (88 P.R.R. at 37)

"Mr. Justice Santana Becerra wishes to state—consistent with his view expressed in *People* v. *Díaz,* 86 P.R.R. 529 (1962) —that in his opinion the defendant has the right to be furnished with the sworn statements of the witnesses waived by the Prosecuting Attorney as cumulative evidence, *as an element of judgment in the preparation of his evidence,* and because at that stage, the reason for the secretiveness of the preliminary investigation of the Prosecuting Attorney, whether justified or not, has already lost its effectiveness and the question should rest on the sound discretion of the trial judge which shall adequately protect defendant's rights; but in the light of all the facts and circumstances appearing in the record and which are related to the refusal to order the delivery of said statements, he believes that in this case no substantial prejudice was caused to the defendant to warrant the reversal of the judgment of conviction." (Italics ours.)[1]

---

[1] The theory of the secretiveness of the preliminary investigation of the prosecuting attorney, edified over a slight expression of § 11 of the Code of Criminal Procedure adopted in 1902, to the effect that *"the examination"* of witnesses by the prosecuting attorney must be in private, theory which was supported by the fact that under the system then prevailing, the prosecuting attorney had the power to determine probable cause to order arrests and also to submit the citizen to prosecution, has lost its efficacy and in my opinion has no longer a rational ground to be supported: first, since by the Constitution of 1952 the prosecuting attorney was deprived of his power to determine probable cause for arrests; and afterwards, since 1963, he was deprived of the power to determine probable cause to submit a citizen to prosecution; and also, within the spirit of the doctrine of the due process established in the known case of *Jencks* v. *United States,* 353 U.S. 657 (1967); and after the effectiveness of the present Rule 95 of the Rules of Criminal Procedure.

As it was in the Spanish procedure which prevailed here before the

The Court adopts the rule, but I cannot agree with the expression of prospective effect and force with which it limits it.

In this decision, as in other recent decisions of the Court, they have apparently sought to follow the mechanism recently followed by the Supreme Court of the United States in relation to the application of criminal decisions to other cases. Only that, apparently, said mechanism is not being correctly understood.

1. In *Eskridge* v. *Washington State Board of Prisons*, 357 U.S. 214 (1958)., it was determined that the decision in *Griffin* v. *Illinois*, 351 U.S. 12 (1956), which recognized an indigent defendant's right to the transcript for his appeal without any cost, against the refusal to deliver it to him, was retroactively applicable to situations occurring before said decision.

2. In *Linkletter* v. *Walker*, 381 U.S. 618 (1965), where the prospective or retroactive effect of the decision in *Mapp* v. *Ohio*, 367 U.S. 643 (1961), was considered, the Court

---

criminal procedure of 1902—where once a cause for prosecution was declared, the preliminary investigation of the prosecuting attorney was open to the defendant—it seems to me that once the prosecuting attorney resorts with his investigation to a magistrate and the latter determines that there is probable cause to prosecute a citizen, all the preliminary investigation of the prosecuting attorney then acquires the concept of public record as a result of the judicial intervention, and it should be available to the defendant.

To maintain its secretiveness thereafter is at variance with the most modern procedural view of a fair trial with the cards on the table and without concealed surprises, because it facilitates the search for truth in the due preparation of the defendant for the trial before the same commences. What has been said gains more raison d'être to me in the case of poor citizens who compose the great mass of citizens that face criminal prosecutions, and who lack the means and mechanisms to prepare their defenses which are at the disposal of the prosecuting attorney in the investigation and accumulation of evidence for the trial.

I think that the moment has been reached when this theory of secretiveness in which the State continues taking refuge, should be reevaluated, either by judicial determination as a problem of a fair and impartial trial, or by legislative study and criteria.

makes a clear exposition of the rule of law to be followed and the elements to be considered in deciding whether or not a decision is to be applied to like situations which are contemporaneous or prior to the same, or whether only to similar situations arising subsequent to the same.

Justice Clark's doctrinal exposition in *Linkletter*, on the matter, in my judgment not surpassed by subsequent expressions of the Court, has not been rejected.

3. In *Johnson* v. *New Jersey*, 384 U.S. 719 (1966), it was held that the decision of *Gideon* v. *Wainright*, 372 U.S. 335 (1963), which established the right to be represented by counsel, was retroactively applicable, that is, to proceedings occurring before said decision, and likewise it upheld the retrospective application of *Jackson* v. *Denno*, 378 U.S. 368 (1964).

4. *Johnson* v. *New Jersey, supra,* provided also that the doctrine in *Escobedo* v. *Illinois*, 378 U.S. 478 (1964), was applicable only to proceedings commencing after said decision, June 22, 1964, and gave, likewise, prospective application to *Miranda* v. *Arizona*, 384 U.S. 436 (June 13, 1966).

5. In *Tehan* v. *Shott*, 382 U.S. 406 (1966), it was ruled that the decision in *Griffin* v. *California*, 380 U.S. 609 (1965), would not be applied retrospectively.

6. *Stovall* v. *Denno*, 388 U.S. 293 (June 12, 1967), provided that the constitutional rules established on that day in *United States* v. *Wade*, 388 U.S. 218, and in *Gilbert* v. *California*, 388 U.S. 263, involving confrontations for identification purposes, would apply to confrontations which arose subsequent to that date.

7. *Roberts* v. *Russell*, 392 U.S. 293 (1968), provided the retroactive application of the rule established in *Bruton* v. *United States*, 391 U.S. 123 (1968).

8. The prospective application of the decision of *Duncan* v. *Louisiana*, 391 U.S. 145 (1968), and of *Bloom* v. *Illinois*,

391 U.S. 194 (1968), was provided in *DeStefano* v. *Woods,* 392 U.S. 631 (1968).

9. *Berger* v. *California,* 393 U.S. 314 (1969), established the retroactive application of the doctrine established in *Barber* v. *Page,* 390 U.S. 719 (1968), about prior testimonies of witnesses.

10. *Desist* v. *United States,* 394 U.S. 244 (1969), provided that the rule established in *Katz* v. *United States,* 389 U.S. 347 (1967), would be applied prospectively to investigations performed after such decision.

11. *Jenkins* v. *Delaware,* 395 U.S. 213 (1969), established that the rule in *Miranda* v. *Arizona,* 384 U.S. 436 (1966), was not applicable to defendants whose new trials commenced after the said decision of *Miranda,* but whose original trials commenced prior to the same.

If these pronouncements are examined, it will be seen that the Supreme Court has not acted whimsically and by mere fiat in giving only prospective effect to one of its decisions, as an exception and departing from the traditional rule of law to the effect that the judicial ruling declares the law as the law has been. The reasons for the prospective operation have been set forth only on a case to case basis and in the light of all the facts and circumstances involved in each situation.

In my dissenting expression in *People* v. *Delgado Martínez,* 96 P.R.R. 703, 708 *et seq.,* I had the occasion to express myself on that particular. A decisive element has also been whether the problem is faced in a collateral attack to the judgment or on a direct appeal. As it is stated in *Johnson* v. *New Jersey, supra* at 728, the retroactivity or nonretroactivity of a rule is not automatically determined by the constitutional provision on which the ruling relies. Each constitutional rule of criminal procedure has its own functions and its own effect in the administration of justice, and the manner

in which these elements are combined should vary inevitably with the ruling given. Thus, we should determine the retroactivity *"in each case,"* examining the peculiar features of the specific "rule involved."[2]

But in spite of the foregoing and the recent mechanism used by the Supreme Court of the United States, mechanism which we try to apply, but only in an automatic manner and not in a selective and grounded one as those decisions establish, said Court has not set an effective date for a decision upon issuing the same. To render judgment, which is a function of construing and declaring the applicable law to a litigious question, fixing a clause of effectiveness to said judgment, ceases to be a judicial function to become a purely legislative act which is not permissible. Under the constitutional system of the Commonwealth of Puerto Rico, it is tantamount to adopting a rule of criminal procedure as of a determined date, bypassing the legislative intervention required by the Constitution.

As I announced my position in the *Díaz* and *Cotto Torres* cases, the refusal to deliver the statements during the aforesaid stage may or may not lead to a situation of a just and impartial trial *depending on the particular circumstances of each case*. The rule which is adopted today would exclude and leave without judicial correction by means of a legislative fiat of the court itself, cases in which defendant's rights could have been prejudiced in the light of their particular facts and circumstances. In view of the foregoing, I dissent from that part of the judgment.

I have examined the record in this case, and according to the same and its circumstances, I believe that the refusal

---

[2] *Cf. Limitation of New Judge-Made Law to Prospective Effect Only: "Prospective Overruling,"* 51 Marquette L. Rev. 254 (1967).

*Notes*: Of the case of *Kenney* v. *Haugh,* 163 N.W.2d 428 (Iowa 1968), in 18-2 Drake L. Rev. 285;

Schaefer, *The Control of "Sunbursts": Techniques of Prospective Overruling,* 42 N.Y.U. L. Rev. 631 (1967).

to grant the sworn statements at the stage where they were requested did not create a state of defenselessness and prejudice to appellant to warrant the reversal of the judgment. The defense itself, as a matter of fact, waived invoking such prejudice in stating, for the record, that from the interview held with the waived witness there appeared nothing that would make it use him as a witness for the defense. I have reached this conclusion "beyond a reasonable doubt," pursuant to the rule which *Chapman* v. *California,* 386 U.S. 18, 24, required.

Like in *Cotto Torres,* I believe that a reversible error was not committed under the circumstances of this case, where also a short, clear, simple evidence for the prosecution, without any discrepancies within itself, and of a strong probative force, was involved.

